RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0047P (6th Cir.)
File Name: 02a0047p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

    *v.*

MICHAEL D. STUBBS,
     *Defendant-Appellant.*

No. 99-3726

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 97-00765—James G. Carr, District Judge.

Argued: April 26, 2001

Decided and Filed: February 5, 2002

Before: BOGGS and CLAY, Circuit Judges; ROBERTS,
District Judge.

———————————————

**COUNSEL**

**ARGUED:** Robert A. Ratliff, BRATTON & RATLIFF,
Cincinnati, Ohio, for Appellant. Joseph R. Wilson,
ASSISTANT UNITED STATES ATTORNEY, Toledo,

———————————

   *The Honorable Victoria A. Roberts, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

Ohio, for Appellee. **ON BRIEF:** Robert A. Ratliff, BRATTON & RATLIFF, Cincinnati, Ohio, for Appellant. Joseph R. Wilson, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee.

CLAY, J., delivered the opinion of the court, in which ROBERTS, D. J., joined. BOGGS, J. (pp. 16-27), delivered a separate dissenting opinion.

—————————

## OPINION

—————————

CLAY, Circuit Judge.  Defendant, Michael D. Stubbs, appeals from his judgment of conviction and sentence after pleading guilty to three counts of a thirteen-count indictment. One of the counts to which Defendant pleaded guilty charged that he had conspired to use or possess firearms during and in relation to the commission of a drug trafficking crime in violation of 21 U.S.C. § 846 and 18 U.S.C. § 924(o).  For this count, Defendant was sentenced under 18 U.S.C. § 924(c) to a mandatory 60-month term of imprisonment to be served consecutive to all other sentences.  On appeal, Defendant argues that the district court erred in sentencing him under 18 U.S.C. § 924(c) when he in fact was charged with and pleaded guilty to a violation 18 U.S.C. § 924(o), which carries a term of imprisonment of up to 20 years.  For the reasons that follow, we **VACATE** Defendant's sentence and **REMAND** for resentencing.

## BACKGROUND

On September 17, 1997, a Northern District of Ohio grand jury returned a thirteen-count indictment charging Defendant in three of the thirteen counts.  Defendant was charged (1) in count one with conspiracy to distribute and possess with the intent to distribute cocaine, cocaine base and marijuana, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846; (2) in count twelve with aiding and abetting two co-defendants with traveling in interstate commerce with the intent to murder in

Stubbs can no more satisfy the standard for ineffective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668 (1984), than he can the plain error standard.

I would hold that the use of a 60-month consecutive sentence based on § 924(*o*) is not plainly erroneous, and affirm Stubbs's sentence.  I therefore respectfully dissent.

total maximum penalty that is less than the maximum of the guideline range that would have resulted had there not been a count of conviction" under these statutes. USSG § 2K2.4, comment. (n.2). "In such a case, an upward departure may be warranted so that the conviction . . . does not result in a decrease in the total punishment." *Ibid*. This evinces a clear intent by the Commission that the complex interaction between mandatory minimums and guideline provisions not result in disproportionate sentencing, and that in order to cure an atypical case where application of the guidelines would lead to such a sentence, an upward departure is appropriate to assure proportionality. Therefore, even if the offense level sentence were deemed greater than the sentence using the 60-months-consecutive provision – the only way Stubbs may show an error – the sentence Stubbs hypothetically would have received would have been subject to an upward departure so that it would not be less than the sentence received by an otherwise similarly-situated defendant who committed a less serious § 924(*o*) offense.

I would not hold that an upward departure has occurred, as it is the burden of the defendant to show that a plain error has occurred, and Stubbs has not shown that the cross-reference was inapplicable and that a 195-month sentence would have required an upward departure. Under the specific facts of this case, where the only "plain" matter is that the applicable guideline is "plainly" ambiguous, there is no clarification we can attempt in the approach to sentencing under § 924(*o*) that can offer Stubbs any relief. Stubbs's plea agreement specifically contemplated the use of the 60-month consecutive sentence for § 924(*o*). As the discussion above indicates, Stubbs was not misadvised when he was told this was a valid potential sentence for his offense. It was indeed the most likely sentence, and neither he nor the court has shown that he was prejudiced by accepting it or that he would have received a lesser sentence under the Guidelines absent the sentencing method of which he complains. In fact, defendants who *did* receive a lesser sentence by avoiding the cross-reference would normally be denied the benefit of this reduction through an upward departure. In the absence of prejudice,

violation of 18 U.S.C. §§ 2, 1958; and (3) in count thirteen with conspiracy to use and carry firearms during and in relation to the commission of a drug trafficking crime in violation of 21 U.S.C. § 846 and 18 U.S.C. § 924(o).

Defendant's trial counsel and the government negotiated a plea agreement during jury selection. Pursuant to that written plea agreement, Defendant pleaded guilty to all three counts of the indictment in which he was charged. The plea agreement provided that count thirteen, which charged Defendant with violating § 924(o), called for a mandatory consecutive term of 60 months' imprisonment. The plea agreement also provided that Defendant waived his right to directly appeal his sentence or seek post-conviction relief such as that offered under 28 U.S.C. § 2255. The agreement provided that Defendant only preserved the right to appeal "(a) any punishment imposed in excess of a statutory maximum, or the terms stated within this agreement; and (b) any punishment to the extent it constitutes an upward departure from the guidelines range deemed most applicable by the sentencing court; and (c) any other issue directly relating to the interpretation, application, or enforcement of this agreement." (J.A. at 52.)

On April 28, 1998, the district court held a plea hearing and accepted Defendant's guilty plea. The district court found that there was a factual basis for the plea agreement, that Defendant was competent to make the plea agreement, and that Defendant's guilty plea in accordance with the plea agreement was knowing and voluntary.

Defendant filed a *pro se* motion to withdraw his guilty plea on October 6, 1998. Defendant argued that he had received ineffective assistance of counsel, that the Pre-Sentence Investigation Report was not in accordance with the plea agreement, and that his plea agreement was not knowing and voluntary because he was coerced into the agreement without time or information to make a wise decision. The district court denied the motion to withdraw after a hearing on March 12, 1999.

Defendant appeared for sentencing on May 10, 1999 where the district court sentenced Defendant to 135 months of imprisonment for counts one and twelve to be served concurrently, and to 60 months of imprisonment for count thirteen to be served consecutive to the 135-month sentence. Defendant was also sentenced to 5 years of supervised release and ordered to pay a special assessment of $300.

This timely appeal followed.

## ANALYSIS

Defendant now appeals his sentence for a violation of § 924(o) arguing that the district court erred in sentencing him to a mandatory 60-month consecutive sentence under § 924(c). Defendant argues that he could not be sentenced under § 924(c) when he was only charged with and he only pleaded guilty to a violation of § 924(o).

The government argues, however, that Defendant's sentence is proper under the sentencing guidelines. Specifically, the government argues that USSG § 2K2.1(c) applies to Defendant's offense. Section 2K2.1(c) provides in pertinent part:

(a) If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply–

(A) §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above
. . .

USSG § 2K2.1(c)(1)(A) (1998). Section 2X1.1 in turn provides that when sentencing for an offense involving attempt, solicitation or conspiracy, the court is to use the base offense level from the guideline for the substantive offense.

sentence for an inchoate crime would be controlled by the substantive offense in most circumstances, save for when the defendant's accumulation of firearms was so egregious in itself that it becomes more serious than a routine charge of using firearms in narcotics trafficking. Nonetheless, I would not resolve this difficult problem, because it is irrelevant from the standpoint of plain error whether an offense level of 24 (or any other alternative offense level one might calculate) "exceeds" in some sense a 60-month consecutive sentence.

If the 60-month consecutive sentence is deemed to exceed the offense level calculated pursuant to §§ 2K2.1(a)-(b), then the cross-reference was correctly applied and Stubbs was sentenced correctly. If the offense level sentence is deemed to equal or exceed the mandatory minimum sentence, then although his incorrect 60-month sentence would technically be a windfall in relation to the "greater" proper sentence, the guideline sentence could have been combined with his other offenses, resulting in a lower total punishment of between 135 to 168 months.[10] This result is paradoxical, of course, because a more serious firearms conspiracy (involving convicted felons, automatic weapons, and a large arsenal) would be punished less severely than a less serious form of the same offense. However, if the cross-reference were inapplicable, Stubbs's sentence of 195 months would nevertheless be outside the range provided by a proper reading of the Guidelines.

Nevertheless, the Guidelines specifically provide for circumstances where a "mandatory consecutive sentence under 18 U.S.C. § 844(h), § 924(c), or § 929(a), produces a

---

[10] If we assume an offense level of 24, under USSG § 3D1.4(b), another count with an offense level of 24 would raise the aggregate offense level to 33 (use of offense level 32 was contemplated by the plea agreement for Stubbs's other charges). Offense level 24 is between "5 to 8 levels less serious" than the highest offense level charged and would result in an increase of one offense level through the addition of one-half Unit. This produces a guideline range of 135-168 months, which is less than, and non-overlapping with, a range produced by offense level 32 with 60 months consecutive, which would be 181-211 months.

As a practical matter, a 60-month consecutive sentence is largely incommensurable with an offense level of 24, because the comparative severity of the sentences depends on the existence and magnitude of other counts for the consecutive sentence and on the CHC for the offense level sentence.[8] However, the CHC and the interaction with other counts cannot be considered, pursuant to § 1B1.5, at this stage of the analysis. Even when considered in isolation, as I would hold it must be, the comparison remains problematic, as the relevant quantities involve a range of 51-63 months with an intermediate fixed point of 60 months.[9] On the one hand, the range offers Stubbs the potential of a lower sentence, and it is a statistical fact that the lower range of the guidelines is used with greater frequency. *See* UNITED STATES SENTENCING COMMISSION, 1999 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS 60 (1999). On the other hand, it exposes him to greater potential punishment without the need to justify an upward departure.

Perhaps the most logical resolution would be to compare the midpoint of the offense level range under CHC I (in effect ignoring the defendant's criminal history, which is assessed under Chapter Four rather than Chapter Two) with the cross-referenced mandatory sentence. The sentencing court would compare 57 months with 60 months and would apply the cross-reference. *Cf. United States v. Flennory*, 145 F.3d 1264, 1266 (11th Cir. 1998) (approving of conclusion "that USSG § 2K2.1(c)(1)(A) would apply if its application resulted in a greater sentence than the subsection (b)(5) enhancement"). This resolution accords at least with the intended function of the cross-reference, in that a defendant's

---

[8] For instance a CHC of VI, combined with an offense level of 24, generates a guideline range of 100-125 months in prison, potentially more than double a 60-month sentence taken from § 2K2.4.

[9] In the most recent version of guidelines, it is made clear that the statutorily-derived minimum sentence is the guideline sentence, and anything above the minimum "is an upward departure." USSG § 2K2.4, comment. (n.1) (Nov. 2001).

USSG § 2X1.1 (1998). The government argues that the substantive offense in this case is a violation of § 924(c), which is covered by USSG § 2K2.4. Section 2K2.4 provides that the term of imprisonment for offenses under § 924(c) is that required by statute, which is a mandatory consecutive, minimum 60-month sentence. USSG § 2K2.4. The government therefore argues that under the cross-reference provisions in the guidelines, Defendant's sentence is proper.

Defendant counters that § 2K2.1(c) does not apply to his case. Instead, Defendant argues, § 2K2.1(a), (b) govern the calculation of his offense level and thus his sentencing range under the sentencing guidelines.

We agree with Defendant that he was improperly sentenced under § 924(c) when he was charged with and pleaded guilty to a violation of § 924(o). We reject the government's contention that Defendant's sentence is proper under USSG § 2K2.1(c); and we hold that Defendant's challenge to his sentence is not barred by his written waiver of his right to appeal inasmuch as Defendant's plea agreement, and thus the waiver, was not knowing and voluntary.

## I.

Because Defendant did not object to his sentence on the ground now alleged, our review is limited to plain error. *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). Under plain error review, this Court may only reverse if (1) there is error; (2) the error is plain; (3) the error affects the defendant's substantial rights; and (4) the fairness, integrity or public reputation of the judicial process is seriously affected. *Id.* We conclude that reversal is proper in the instant case because there was plain error that affected Defendant's substantial rights, which seriously affects the fairness, integrity or public reputation of the judicial process.

We begin with the rudimentary principle that, except in narrow circumstances not relevant here, an indictment is a necessary prerequisite to a conviction and sentence when a defendant is charged with a felony offense in federal court.

*Stirone v. United States*, 361 U.S. 212, 217 (1960). An indictment is sufficient if it charges an offense, contains the elements of that offense, and fairly informs the defendant of the charge against him. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *accord Jones v. United States*, 526 U.S. 227 (1999). Furthermore, it is well-established that after an indictment has been returned, its charge may not be broadened except by amendment by the grand jury itself. *Stirone*, 361 U.S. at 217-18; *see also United States v. Miller*, 471 U.S. 130, 138 (1985) (citing *Stirone*, 361 U.S. at 217-18).

We find the Supreme Court's decision in *Jones* instructive in resolving the case at bar. There, the Supreme Court held that elements of an offense must be charged in the indictment, submitted to a jury and proven beyond a reasonable doubt. 526 U.S. at 232. In *Jones*, the defendant was indicted under 18 U.S.C. § 2119, but the indictment did not specify a particular subsection under § 2119. At trial, the defendant was convicted under jury instructions corresponding to subsection (1) which carried a maximum penalty of fifteen years. *Id.* at 230-31. The presentence report, however, recommended that the defendant be sentenced to twenty-five years because one of the victims suffered serious bodily injury, referencing subsection (2) and testimony from the trial. *Id.* at 231. The district court adopted the recommendation of the presentence report, finding that the serious bodily injury had been proven by a preponderance of the evidence. *Id.*

The government argued before the Supreme Court that the sentence should stand because the subsections of § 2119 were only sentencing factors and therefore did not have to be pleaded in the indictment, submitted to a jury, and proven beyond a reasonable doubt. The Court rejected this argument, finding that "the Government's view would raise serious constitutional questions." *Jones*, 526 U.S. at 251. The Court concluded that because each subsection of § 2119 called for a different range of statutory penalties, each subsection constituted a different offense. Therefore, due process and the Sixth Amendment required that each element be charged

must somehow compare the use of the mandatory consecutive sentence with an offense level (according to our calculation) of 24. There are two ways to make this comparison: (1) to "translate" the 60-month consecutive sentence into an offense level and make the comparison, or (2) to consider that the 60-month consecutive sentence, when added to defendant's other sentences, generates a guideline range, and compare this aggregate range with the aggregate guideline range generated by direct application of § 2K2.1(a)(b) and any appropriate grouping rules from USSG §§ 3D1.1-5.

Neither method of comparison is without some risk of "incongruous" results. Superficially, we would be comparing like measures if we used the aggregate guideline ranges that would determine the defendant's total punishment under the different approaches. However, the Guidelines forbid this method. General provisions govern a "reference to another guideline . . . applied only if it results in the greater offense level. In such case, the greater offense level means the greater *Chapter Two* offense level, except as otherwise expressly provided." USSG § 1B1.5(d) (emphasis added). Grouping and aggregation rules arise from Chapter Three and Chapter Five, rather than the offense-specific measures provided in Chapter Two. A little reflection reveals that, however convenient such comparison might be in this case, it would often lead to endless convolutions in sentencing, as the sentencing court deviated from the stepwise method of sentence determination, *see* § 1B1.1, in favor of moving back and forth between the possible total sentences and their components.[7]

---

[7] In order to minimize confusion (to the extent that is possible) I would note that the cross-reference comparison is quite a different analysis from the one made in determining whether a defendant's substantial rights are violated, or whether an upward departure is warranted. For these latter purposes the evaluation of aggregate punishment is appropriate. *See* § 1B1.1 (providing that the determination of the guideline range in § 1B1.1(g) is to occur *before* consideration of departures in § 1B1.1(i), but *after* consideration of cross-references in § 1B1.1(b)).

government's position, § 2K2.4 would be used to sentence *all* defendants convicted of § 924(*o*), which would make the Commission's assignment of guideline § 2K2.1 to § 924(*o*) completely superfluous, and the Congressional provision of different statutory penalties for § 924(*o*) and § 924(c) also largely superfluous. I would therefore not find the automatic use of the cross-reference provisions to be consistent with the intent of Congress or the Sentencing Guidelines.

Stubbs, however, has convinced the court to take an equally incorrect position that *never* allows the use of the cross-reference. The firearms guidelines provide two roughly parallel ways to punish the instrumental use of firearms in other criminal conduct, § 2K2.1(b)(5) and § 2K2.1(c). These use similar (although not identical) language and standards to describe the necessary level of association, and frequently both will be applicable as sentencing alternatives. Each of the parties urges their preferred method, but the guidelines indicate that *both* methods are to be employed and the results then compared. Because only one method was considered by the court, and it was presented to Stubbs as inevitable, a legal error in interpreting the Guidelines appears to have occurred. However, it remains to be determined whether Stubbs in fact was subject to a sentence different from that which he would have received under a correct application the Guidelines.

### Comparison of Sentencing Methods Pursuant to USSG § 2K2.1(c)(1)(A)

It has often been noted that mandatory minimum statutes are "structurally and functionally at odds with sentencing guidelines[,]" necessarily creating "incongruities" that the federal courts and the Sentencing Commission are required to reconcile as best they can. *Neal v. United States*, 516 U.S. 284, 291 (1996) (citations and internal quotation marks omitted); *see also United States v. Burke*, 237 F.3d 741, 745 n.2 (6th Cir. 2001). In Stubbs's case, the use of the cross-reference will, pursuant to § 2K2.4, add 60 months to his sentence rather than produce an offense level. In order to fulfill the mandate of § 2K2.1(c)(1)(a), the sentencing court

in the indictment, submitted to a jury, and proven beyond a reasonable doubt. *Id.* at 244-52.

Prior to *Jones*, however, the First Circuit concluded that, in some instances, use of § 2K2.1(c) created a due process problem. *See United States v. Lombard*, 72 F.3d 170 (1995).[1] In *Lombard*, the defendant was charged with and convicted of unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g), 924(e). Because the defendant's primary offense, a violation of § 922(g), involved a firearm, § 2K2.1 applied in his case. There, the district court applied subsection (c), which provided for the cross-reference. The district court considered a murder, of which the defendant was acquitted in state court and was not charged in federal court, as "another offense". The district court concluded, by a preponderance of the evidence that the defendant had committed the offenses and applied § 2X1.1, which directed the court to the base offense level for the underlying offense, which was first-degree murder. Consequently, the defendant was subject to a mandatory life sentence. *Id.* at 175.

On appeal, the First Circuit vacated the sentence and remanded the case, opining that

> [t]he effect here has been to permit the harshest penalty outside of capital punishment to be imposed not for conduct charged and convicted but for other conduct as to which there was, at sentencing, at best a shadow of the usual procedural protection, such as the requirement of proof beyond a reasonable doubt. . . . The punishment imposed in view of this other conduct far outstripped in degree and kind the punishment Lombard would otherwise have received for the offense of conviction.

---

[1] While *Lombard* is not particularly on point because it contains principles which clearly would not be acceptable in the face of *Jones* and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the successor to *Jones*, it does illustrate that there is clearly a constitutional problem with the manner in which Defendant was sentenced.

72 F.3d at 177. Among other things, the court was particularly troubled that "[u]nlike certain 'relevant conduct' guidelines that simply call for a determinate increase in a defendant's [base offense level] based on specified factual findings . . ., the cross-reference provision that was applied in this case, U.S.S.G. § 2K2.1(c), required the district court to calculate [the defendant's base offense level] *as if* his offense of conviction had been murder." *Id.* (emphasis in original). While it appears that the factor that most influenced the court to vacate the sentence was the harshness of the penalty, the court nevertheless recognized that,

> through the mechanisms of the Guidelines . . ., the sentencing phase of the defendant's trial produced the conclusion he had committed murder and mandated imposition of a life sentence, but without the protections which normally attend the criminal process, such as the requirement of proof beyond a reasonable doubt.

*Id.* at 179-80.

This Court, in *United States v. Flowal*, 234 F.3d 932 (6th Cir. 2000) and *United States v. Ramirez*, 242 F.3d 348 (6th Cir. 2001), concluded that *Apprendi v. New Jersey*, 530 U.S. 466 (2000),[2] applied any time a factual determination changed the staturorily prescribed range of sentences. In *Flowal*, the Court held that "[b]ecause the amount of the drugs at issue determined the appropriate statutory punishment, a jury should have determined the weight of the drugs beyond a reasonable doubt." 234 F.3d at 937. Similarly, in *Ramirez*, this Court stated that,

---

[2]In *Apprendi*, the Supreme Court reaffirmed the principle expressed in *Jones.* There the Court held that, other than prior convictions, any fact hat increases the penalty for a crime beyond the prescribed statutory maximum must be pleaded in the indictment, submitted to a jury, and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

---

presentence report applied to determine Stubbs's sentence, and at the time of sentencing, all parties appear to have assumed that § 2K2.4 governed Stubbs's sentencing for firearms conspiracy.

When arrived at through means of § 2X1.1(a), as the government now acknowledges was the case, (Gov't Br. at 14), the use of § 2K2.4 presents an interpretive challenge.[6] *See Morehead*, 959 F.2d at 1509. § 2K2.4 (1998) provides that if "the defendant . . . was convicted under . . . § 924(c) . . . the term of imprisonment is that required by statute." This guideline does not fulfill § 2X1.1's implied promise of an offense level, and the sentencing court is sent back to Title 18, which provides the mandatory and consecutive 60-month sentence (as a minimum).

My judgment is that both parties are giving half of the sentencing story, and ignoring the interdependence of the cross-reference provision with other portions of § 2K2.1. The cross reference, § 2K2.1(c), is conditional: one is to use the sentence produced by the cross-reference only if the "resulting offense level is greater than that determined above." The government's position of beginning with § 2K2.1(c) results in neither an offense level "determined above" (in the earlier portions of § 2K2.1) nor a "resulting offense level," making the required calculation perforce rather difficult. Under the

---

[6]Although not discussed by the government in this case, it may be noted that there is an alternative method that would result in the application of the § 2K2.4 guideline to a § 924(o) conviction. Under USSG § 1B1.2, there is a limited exception to the rule that the statutory index in Appendix A will be used to determine the initial guideline. When a plea agreement "specifically establishes facts that prove a more serious offense or offenses than the offense or offenses of conviction, the court is to apply the guideline most applicable to the more serious offense . . . ." USSG § 1B1.2, comment. (n.1) (1998) (explaining that the exception prevents the necessity of calculations that "unduly complicate the sentencing process"). Arguably, Stubbs's admissions in his agreement establish that an actual § 924(c) violation had occurred, meaning that even if an interpretive error occurred, Stubbs's sentence would have been the same, and he can therefore show no plain error.

would have likely resulted in a sentence of between 51 and 63 months in prison.[4]

Stubbs's position appears to be that our inquiry should end after consideration of § 2K2.1(a) and (b), and that we should not proceed to consider whether the cross-reference provisions of § 2K2.1(c) should apply. In relevant part, this section provides that if a defendant: "possessed . . . a firearm . . . with knowledge or intent that it would be used or possessed in connection with another offense, apply . . . § 2X1.1(Attempt, Solicitation or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above . . . ." USSG § 2K2.1(c)(1); *but see* USSG § 2K2.1, comment. (n. 18) (stating that as "used in subsections . . . (c)(1), 'another felony offense' and 'another offense' refer to offenses other than explosives or firearms possession or trafficking offenses").[5]

The government, by contrast with appellant, urges us to *begin* with § 2K2.1(c), and it appears that the government's sentencing theory reflects how Stubbs was actually sentenced. Under USSG § 2X1.1(a), the base offense level for a § 924(*o*) charge would be the "base offense level from the guideline for the substantive offense. . . ." The substantive offense here is § 924 (c)(1), which is governed by USSG § 2K2.4. Without engaging in the foregoing analysis, it was § 2K2.4 that the

---

[4] The plea agreement did not stipulate to a criminal history category (CHC) for Stubbs. The presentence report for Stubbs reveals a recommendation of CHC III. However, he was sentenced by the district court as if he was in CHC I. Therefore, we will assume that this category would have been used to determine the sentence for § 924(*o*), had a putatively mandatory sentence not been applied.

[5] This commentary does not appear to apply to 18 U.S.C. § 924(c)(1), at least as it existed prior to amendment, as this punished the carrying and use of firearms rather than merely firearms *possession or trafficking*. The note does not stop the use of the cross-reference for all "firearms offenses" but a limited subset of these, from which former § 924(c) is logically excluded. This interpretation is in accord with § 924(c)'s coverage in a separate section of the Guidelines.

in the language of *Apprendi* . . . "the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed," such as moving up the scale of mandatory minimum sentence, invokes the full range of constitutional protections required for "elements of the crime."

242 F.3d at 351 (citation omitted).

The case at bar is different from *Jones* or *Apprendi* in that the Defendant's sentence was not enhanced based upon some factual finding. Indeed, we consider this case to be more fundamental because Defendant was indicted for one offense and sentenced under another simply by operation of a cross-reference in the sentencing guidelines and without many of the procedural safeguards necessary for a criminal proceeding. Although *Jones, Apprendi* and their progeny do not address the precise issue presented by this case, the principles espoused therein are instructive.

There can be no doubt that § 924(c) and § 924(o) charge different offenses. Each statute requires different levels of proof as to conduct and *mens rea*. And, most notably, these two statutory provisions call for significantly different statutory penalties, which under *Jones* makes them different offenses. The government must therefore charge each offense and the elements thereof in an indictment. Because the government cannot broaden the scope of the indictment without an amendment by the grand jury, Defendant cannot be sentenced under § 924(c) unless the indictment charged him with a violation of § 924(c). We therefore conclude that it was plain error for the district court to sentence Defendant under § 924(c) when he had only pleaded guilty to a violation of § 924(o) and the penalties of that statute are clear on its face.

We reject the government's contention that Defendant's sentence is proper under USSG § 2K2.1(c). Foremost, the government cannot evade the constitutional requirements of the Sixth Amendment and due process by application of the sentencing guidelines. Application of the cross-reference

provision as the government suggests leads to a change in both the crime of conviction and the statutory sentencing range. This result runs contrary to fundamental principles of due process, the Sixth Amendment right to notice through indictment by a grand jury, and this Court's decisions in *Ramirez* and *Flowal*.

The government's argument must also fail because its interpretation of USSG § 2K2.1(c) does not comport with the clear and plain language of the guideline. By its own terms, § 2K2.1(c) applies if the defendant uses or possesses the firearm in connection with "another" offense, i.e., an offense other than the firearm offense for which the guideline is being applied in the first instance. There is no basis for concluding that the very firearm offense that triggers the application of § 2K2.1 also constitutes "another" offense as referenced in subsection (c). If the triggering offense and the offense referenced in subsection (c) could be the same offense, there would be no need to use the word "another". Furthermore, it is a foregone conclusion that a defendant will either use or possess (actual or constructive) a firearm in connection with most firearm offenses such that subsection (c) could, and would likely, apply to any offense under § 2K2.1. This interpretation would make the other provisions of § 2K2.1 virtually superfluous. Therefore, constitutional infirmities aside, we reject the government's contention that § 2K2.1 applies to Defendant's case in the first instance.

We also conclude that Defendant's substantial rights were affected by the district court's error. An error affects the defendant's substantial rights if it prejudices the defendant, i.e., if it affects the outcome of the district court's proceedings. *United States v. Page*, 232 F.3d 536, 544 (6th Cir. 2000). Because of the erroneous application of § 924(c), the district court had no choice but to sentence Defendant to a mandatory consecutive 60-month sentence. If Defendant had been properly sentenced under § 924(o), he would not have been subject to a mandatory minimum sentence and there would not have been a requirement that the sentence be served consecutive to any other sentenced imposed. The

USSG § 2X5.1, which instruct the court to use the "most analogous offense guideline," and led the Tenth Circuit to apply USSG § 2K2.1(a)(7) and base offense level of 12 (which it then adjusted). *Morehead* reflects the difficulties and two approaches to § 924(o) sentencing, with the defendant arguing for use of §§ 2K2.1(a),(b), and the government urging application of § 2K2.1(c)( leading to §2X1.1 and the statutory sentence for § 924(c)). Although not discussed by the parties, the result in *Morehead* provides some persuasive support for Stubbs's position.

The use of § 2K2.1(a),(b) as the next step in sentencing may be reached  more directly under the current Guidelines. As an initial matter, a court sentencing under § 924(o) would usually look to the most relevant portion of § 2K2.1, namely § 2K2.1(a)(7). This subsection has no pre-conditions to its application ("except as provided below") and thereby represents the appropriate default guideline for offenses governed by § 2K2.1 whose treatment is not otherwise specified. *See* § 2K2.1, comment. (nn. 8, 12). However, as Stubbs acknowledges, he would be governed by § 2K2.1(a)(5), rather than § 2K2.1(a)(7), because his offense involved a weapon listed under 18 U.S.C. § 921(a)(30).[3] This provides a base offense level of 18.

The record indicates that a further enhancement of two levels would then have been required because of the 5 to 7 weapons involved, § 2K2.1(b)(1)(B) (1998), and a four-level enhancement because the weapons were "possessed . . . with knowledge, intent or reason to believe that [they] would be used or possessed in connection with another felony offense." § 2K2.1(b)(5). Under the guideline method advocated by the appellant, therefore, an offense level of 24 is indicated. This

---

[3] The Norinco AK-47 Stubbs admitted to possessing provides the clearest basis for the use of this guideline. *See* 18 U.S.C. § 921(a)(30)(A)(i).

Thus, the parties agree that the first step in determining a sentence for § 924(*o*) is the use of USSG § 2K2.1, and the Guidelines themselves confirm this. *See ibid.*; USSG App. A (1998 ed.). Unfortunately, unlike several other firearms offenses, § 924(*o*) is not related to any specific provision within the guideline, and the essence of the parties' disagreement is about which provision *within* § 2K2.1 should be applied as the next step. In addition to resolving this question, we must also determine to what extent, if any, the different sentencing methods result in differing sentences.

18 U.S.C. § 924(*o*), and its precursor, 18 U.S.C. § 924(n), are relatively infrequently employed statutes, which have not been the subject of extensive case law regarding their treatment under the Sentencing Guidelines.[1] However, the Tenth Circuit has faced a parallel problem. In *United States v. Morehead*, 959 F.2d 1489 (10th Cir. 1992), one of the defendants was charged under the general conspiracy statute, 18 U.S.C. § 371, with the predicate offense being § 924(c), a "conspiracy to use or carry firearms during and in relation to a drug trafficking offense." This led the court initially to attempt to apply USSG § 2X1.1, the conspiracy guideline.[2] However, the court noted that "[a]pplication of this guideline provides some difficulty[,]" *id*. at 1509, because rather than specifying an offense level, this guideline eventually leads to the "term of imprisonment required by statute." The court then looked to the catch-all portions of the conspiracy chapter,

---

[1]Following the decision of the Supreme Court in *Bailey*, 516 U.S. at 144, which heightened the requirements to show violation of § 924(c), § 924(*o*) may have become a more attractive charging alternative that could largely avoid the strictures of *Bailey* if a conspiracy could be shown. With the modification of § 924(c) in response to *Bailey*, the prosecutorial incentive to use § 924(*o*) may have waned.

[2]Although it was not the case in 1992 when *Morehead* was decided, currently those charged under § 371 are governed at least initially by § 2K2.1 when the predicate offense is § 924(c). *See* USSG App. A. This effectively treats § 371 when the predicate offense is § 924(c) identically with § 924(*o*) when the predicate offense is § 924(c), as seems appropriate.

erroneous application of § 924(c) therefore affected the outcome of the district court's proceedings establishing that Defendant's substantial rights were affected, i.e., that he was prejudiced by the error.[3]

There is no question that our criminal justice system is sorely lacking in the procedural safeguards mandated by the Constitution when a defendant can be charged with one crime and sentenced for another. Inasmuch as an error of this magnitude, an error which runs contrary to the administration of justice and the fundamental constitutional principles of due process and the Sixth Amendment right to notice, substantially and adversely affects the integrity of the judicial process, we are compelled to correct it.

## II.

We also reject the government's argument that Defendant cannot appeal the erroneous sentence imposed by the district court because he waived his right to appeal his sentence. It is true that under his plea agreement, Defendant waived the right to appeal his sentence except where the punishment imposed exceeded the statutory maximum or the terms of the agreement, or where the punishment constituted an upward departure from the guideline range deemed most applicable by the sentencing court. Defendant could also appeal any other issue directly related to the interpretation, application and enforcement of the plea agreement.

Certainly, when a Defendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement and will not review the sentence except in limited circumstances. *Hunter v. United States*, 160 F.3d 1109, 1113

---

[3]This Court's decision in *United States v. Garcia*, 252 F.3d 838, 843 (6th Cir. 2001), does not alter this conclusion. Even under that decision, Defendant's substantial rights were affected because Defendant's sentence, which was mandated by the erroneous application of § 924(c), "indicates that the district court thought itself constrained by a specific statute to impose the sentence it did." *Id.* at 843.

(6th Cir. 1998); *Everard v. United States*, 102 F.3d 763, 766 (6th Cir. 1996). However, this is based upon the notion that the plea agreement itself is constitutionally valid, i.e, it is knowing and voluntary. Defendant argues on appeal that his waiver is not valid because his plea was not knowing and voluntary and because he received ineffective assistance of counsel. Because we agree that Defendant's guilty plea was not knowing and voluntary, we decline to address whether Defendant received ineffective assistance of counsel.[4]

Whether Defendant entered into a valid plea agreement and thus waived his right to appeal his sentence is a question of law subject to *de novo* review. *See United States v. Walker*, 160 F.3d 1078, 1096 (6th Cir. 1998).

"'[I]f a defendant's guilty plea is not . . . voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.'" *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). This Court has held that a guilty plea "is not deemed voluntary where the person entering it does so without understanding of the consequences of his plea." *Smith v. United States*, 400 F.2d 860, 862 (6th Cir. 1968) (*per curiam*) (holding that the guilty plea was not voluntary where the defendant was under mistaken belief that the sentence for the crime to which he pleaded guilty could be served concurrently with the sentence he was already serving, and his mistaken belief was not corrected by his attorney or the district court).

---

[4] "It has long been settled that [a] guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice." *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) (citation and internal quotations omitted) (alteration in original).

affected. *Id.* at 545. If the sentence imposed lies within that statutorily authorized, but differs from the sentence absent the error, the effect on substantial rights will depend on the magnitude of the disparity created by the error. *See United States v. Barajas-Nunez*, 91 F.3d 826, 833 (6th Cir. 1996) (finding a plain error when an "incorrect interpretation of the sentencing guidelines" resulted in a "significantly smaller sentence"). As Stubbs's 60-month consecutive sentence for his § 924(*o*) charge is clearly within the statutory limits for § 924(*o*), he is required to show that any error resulted in a substantially different sentence than the one he would have received under the guidelines absent the error. *See Page*, 232 F.3d at 544 (citing *Barajas-Nunez*, 91 F.3d at 833, for the proposition that "an error affects substantial rights when the error results in a sentence substantially different than that which would have been imposed absent the error").

*Methods for Determining a Sentence for 18 U.S.C. § 924(o)*

In his principal and reply briefs, Stubbs gave no indication of how the court should have "properly" sentenced him, not even mentioning the Sentencing Guidelines, although it was through these that his sentence was determined, as his plea agreement makes clear. These briefs were insufficient to show a sentencing error, because the magnitude of sentencing disparity generated by the claimed error could not be demonstrated. At oral argument, however, Stubbs directed our attention to specific provisions of USSG § 2K2.1 that he feels would have been appropriate. Based on the type of weapons involved, he acknowledged that an offense level of 18 might be warranted, *see* USSG § 2K2.1(a)(5), and that perhaps a further two-level adjustment (to level 20) might be required for the number of weapons. *See* USSG § 2K2.1(b)(1)(B). The government contends that Stubbs has been sentenced correctly under the "cross-reference" provisions of USSG § 2K2.1(c) that, through a chain of reasoning discussed below, led to Stubbs receiving the sentence specified for the crime he conspired to commit, § 924(c). *See* USSG § 2K2.1(c)(1)(A).

—————————

### DISSENT

—————————

BOGGS, Circuit Judge, dissenting. The court overturns the sentence of defendant Stubbs because "he was improperly sentenced under § 924(c) when he was charged with and pleaded guilty to a violation of § 924(*o*)." *Supra*, page 5. Stubbs's sentence was well within the statutory maximum for § 924(*o*). As I explain at some length below, the court's sentence was a sentence that would have been arrived at by a correct application of the Guidelines. The fact that it used cross references within the Guidelines structure of another Section does not make it any less the sentence prescribed by the Guidelines for § 924(*o*), albeit by a circuitous route. I therefore respectfully dissent.

Sometime during his library investigations, Stubbs discovered that the *statutory* term of punishment for 18 U.S.C. § 924(*o*) does not require a mandatory minimum sentence, or one that is necessarily consecutive. Instead, it provides that a "person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years . . . ." 18 U.S.C. § 924(*o*) (referring to § 924(c)). As Stubbs points out, although his five-year sentence is well within the statutory maximum of his offense of conviction, his sentence is not mandated by the terms of this particular statutory provision, so he could (he implies) have received a lower term, or perhaps more importantly, one that ran concurrently with the 135 months he received on his other charges.

Under the plain error standard, a reversible error must be one that affects "substantial rights." *See United States v. Page*, 232 F.3d 536, 544 (6th Cir. 2000). With regard to sentencing errors, substantial rights are always affected if a sentence exceeds that authorized by statute for the count of conviction. *See ibid.* If the sentence absent the error would have been the same as that imposed, substantial rights are not

In *Pitts v. United States*, 763 F.2d 197 (6th Cir. 1985), the defendant alleged that his guilty plea was not knowing and voluntary because he was incorrectly informed of the consequences of his guilty plea. The district court had informed the defendant that he could receive up to twenty-five years of imprisonment and a $25,000 fine; however, under the applicable statutes, the defendant could only receive up to fifteen years of imprisonment and a $20,000 fine. *Id.* at 199. In concluding that the district court erred in denying the defendant habeas relief on the ground that his guilty plea was involuntary, this Court stated,

> [w]e stress that this case does not involve a mere failure to give a defendant some information for which he later claims would have affected his pleading decision. Instead it involves affirmative misstatements of the maximum possible sentence. Numerous cases have held that misunderstandings of this nature invalidate a guilty plea.

*Id.* at 201. The Court continued,

> [a]lthough the government argues that the presence of the plea agreement in this case renders this misadvice [regarding the maximum possible sentence] insignificant, the effect of the plea agreement may have been to exacerbate the problem. When considering a plea agreement, a defendant might well weigh the terms of the agreement against the maximum sentence he could receive if he went to trial. When the maximum possible sentence exposure is overstated, the defendant might well be influenced to accept a plea agreement he would otherwise reject.

*Id.*; *see also United States v. Goins*, 51 F.3d 400, (4th Cir. 1995) (holding that district court's failure to inform defendant of mandatory minimum sentence that would be imposed as a result of guilty plea constituted reversible error where defendant was in fact subject to mandatory minimum sentence and there was no evidence that defendant was aware of mandatory minimum sentence).

A similar conclusion was reached in *Bousley v. United States*, 523 U.S. 614 (1998). There, the defendant argued on habeas review that his guilty plea was unintelligent because the district court misinformed him as to the elements of a § 924(c)(1) offense, the crime to which he pleaded guilty. *Id.* at 618. The defendant in *Bousley* had been sentenced prior to the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), which held that the "use" prong of a § 924(c)(1) violation requires that the government prove "active employment of the firearm." *See Bousley*, 523 U.S. at 616. The defendant therefore argued that under *Bailey*, the district court had misinformed him of the nature of the crime charged. The *Bousley* Court held that its decision in *Bailey* applied to the defendant's case despite the fact that he had pleaded guilty prior to the Court's decision in *Bailey*. *Id.* at 620-21. The Court also concluded that if the essential elements of the crime with which the defendant was charged were not understood by the defendant, his counsel, or the district court, then the defendant's guilty plea "would be . . . constitutionally invalid." *Id.* 618-19.

We similarly conclude that Defendant's guilty plea in the case at bar is constitutionally invalid. The record reveals that neither Defendant, his counsel nor the district court was aware that Defendant was not subject to a mandatory consecutive minimum 60-month sentence under § 924(o). There is no record evidence which demonstrates that Defendant was aware of the true nature of the crime charged and the proper statutory consequences of his guilty plea.

Furthermore, it is reasonably probable that but for the misinformation as to Defendant's proper statutory sentence, Defendant would not have pleaded guilty. *See United States v. Gigot*, 147 F.3d 1193, 1198-99 (10th Cir. 1998) (holding that the guilty plea was not intelligent and knowing where the defendant was not advised of the elements of the crime charged and the resulting penalties). Here, Defendant was ready to proceed to trial when his counsel suggested that he plead guilty. Moreover, Defendant had moved to withdraw his guilty plea based in part on the ground that his counsel had

not properly informed him of the nature of the charge against him, albeit for a different reason. It is therefore reasonably probable that had Defendant known that he was not subject to a mandatory consecutive 60-month sentence, but rather was subject to a sentence of up to twenty years that could be served concurrent to any other sentenced received, Defendant would not have pleaded guilty.

We therefore conclude that Defendant's guilty plea was not knowing and voluntary and thus could not serve as a basis for waiver of his right to appeal his sentence.[5]

### CONCLUSION

A defendant is entitled to withdraw his guilty plea if it is constitutionally infirm; however, Defendant does not seek to withdraw his guilty plea in the instant case. Instead, Defendant simply seeks to be properly sentenced under § 924(o). Accordingly, we **VACATE** Defendant's sentence and **REMAND** for resentencing in accordance with this opinion.[6]

---

[5] Defendant argues that his guilty plea was not knowing and voluntary because the district court informed him of his right to appeal his sentence at the sentencing and thus made any waiver invalid. This contention, however, is without merit. *See United States v. Fleming*, 239 F.3d 761, 765 (6th Cir. 2001) (holding that district court's pronouncement that defendant has right to appeal does not void waiver of right to appeal contained in plea agreement which was knowingly and voluntarily made).

[6] Defendant also argues on appeal that the district court violated Rule 32 by failing to amend the Pre-sentence Investigation Report so that it coincides with the actual sentence imposed under his plea agreement. Because we are remanding Defendant's case for resentencing, we need not address this claim of error. We nevertheless note, however, that the district court must strictly and literally comply with Rule 32. *United States v. Saikaly*, 207 F.3d 363, 370 (6th Cir. 2000); *United States v. Manni*, 810 F.2d 80, 83-84 (6th Cir. 1987). Failure to comply will result in a vacation of the sentence and remand for resentencing. *Id.*