**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  10a0565n.06**

**No. 08-5732**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 30, 2010**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                )
                                         )
        Plaintiff - Appellee,            )
                                         )        On Appeal from the United
    v.                                   )        States District Court for the
                                         )        Eastern District of Kentucky
WILLIE DEE CRUMPLER,                     )
                                         )        OPINION
        Defendant - Appellant.           )

**BEFORE:  GIBBONS and KETHLEDGE, Circuit Judges, and SARGUS, District Judge.**[*]

SARGUS, District Judge.  Defendant-Appellant Willie Dee Crumpler ("Appellant") challenges the validity of the waiver of the right to appeal contained in his written plea agreement, asserting that the district court violated Rule 11 when it allegedly failed to ensure that Appellant understood the waiver.  Appellant contends that the district court failed to adopt certain accommodations recommended by a forensic psychologist following Appellant's competency evaluation.  As a preliminary matter, the Government has moved to dismiss this appeal, asserting that Appellant knowingly and voluntarily waived his right to appeal, and such waiver warrants the dismissal of any appeal filed in violation of the waiver.  In support of the motion to dismiss and in its brief on appeal, the Government points out that Appellant was found to be competent, asserts that the court sufficiently ensured that Appellant understood the waiver, and urges that we should not

_____

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

permit Appellant to breach his plea agreement.  For the reasons that follow, we **DISMISS** this appeal.

## I.

A criminal complaint was filed against Appellant on August 30, 2007, alleging that Appellant possessed and conspired to possess with the intent to distribute oxycodone. (R. 1.) Appellant moved for a competency evaluation, which was granted, and a forensic psychologist evaluated Appellant and issued a report (the "Report") to the district court.  (R. 14; R. 47 at 2.)

The Report diagnosed Appellant as having Opioid Dependence, Cannabis Dependence, and Borderline Intellectual Functioning ("BIF").  (R. 14 at 7.)  The Report noted that BIF "is a combination of mildly subaverage intelligence with some deficits in adaptive skills which may interfere with an individual's ability to function independently." (*Id.* at 7–8.) The Report noted that individuals with BIF typically have "difficulty assimilating new information," but they "are typically considered educable and specific deficits in their knowledge are often remediable."  The Report found that "[Appellant] has demonstrated the ability to learn and comprehend when provided with extra time and extensive explanations. . . . [He] has demonstrated good working memory and the ability to recall detailed information when questioned." (*Id.* at 8.)

Based on Appellant's reported history of and treatment for mood disturbance and auditory hallucinations, he was also diagnosed with Schizoaffective Disorder.  However, the Report indicates that Appellant "did not evidence severe thought or mood disturbance during the evaluation period, and any symptoms he may have experienced were stable and well-controlled." (R. 14 at 7.)

As for Appellant's ability to understand legal proceedings, the Report found that Appellant:

Demonstrated a limited understanding of basic legal concepts, the nature of legal proceedings in general, and ability to apply this knowledge to the facts of his own case. He verbalized a factual and rational understanding of his pending legal proceedings. He evidenced some intellectual limitations and reported a history of mental illness, but these limitations did not prevent Mr. Crumpler from speaking clearly, coherently, and realistically about his case.

Mr. Crumpler understood his position as a defendant in a criminal case and understood the crime he is alleged to have committed. He described his legal situation in a simplistic and unsophisticated manner, but in a manner which was rational, non-delusional, and reality-based. He engaged productively and meaningfully in discussions of his case with the examiner. Sometimes legal questions needed to be simplified and repeated for Mr. Crumpler, and he needed to be educated, prompted, and reminded about some aspects of the legal system, but when accommodated in this manner, he responded appropriately.

(R. 14 at 8–9.) The Report also found that Appellant "understood he has an attorney and understood the role of a defense attorney," "understood the adversarial nature of legal proceedings," and "expressed an understanding of the meaning and implications of various pleas." Specifically, the Report stated that Appellant "understood pleading guilty means acknowledging his role in and accepting responsibility for the alleged offense," and that "accepting a plea agreement means pleading guilty . . . in hopes of receiving less punishment." (*Id.* at 9.)

The Report made the following conclusions and recommendations:

Mr. Crumpler is not suffering from a mental condition which prevents him from proceeding competently to trial. He is experiencing some relatively mild intellectual limitations . . . and reports a history of psychiatric symptoms, but these difficulties did not prevent him from participating productively, meaningfully, and sensibly in legally focused interviews with the examiner. The potential detrimental impact of deficits in rapidly processing, assimilating, remembering, and responding to verbally presented information should be alleviated by the following minor accommodations.

The Court should consider:

1.  Slowing down proceedings, repeating information as needed, allowing Mr. Crumpler to ask questions, and allowing ample time for him to respond to questions; and

2.  Allowing frequent breaks during legal proceedings to provide additional opportunities for counsel to discuss new information and developments in the case with Mr. Crumpler.

In addition, counsel should consider:

1.  Spending more time with Mr. Crumpler than may typically be required with defendants . . .;

2.  Briefing and debriefing him at key points in the process . . .;

3.  Checking in periodically with him to make sure he is assimilating information presented during his legal proceedings, and summarizing key points simply in writing to allow him to refer back to them as needed; and

4.  Ensuring Mr. Crumpler understands any legal agreement he is entering by having him recite basic components of the agreement from memory.

Mr. Crumpler displayed a factual and rational understanding of the proceedings against him and demonstrated sufficient present ability to consult with his attorney with a reasonable degree of rational understanding. In addition, the accommodations described above should sufficiently address his intellectual limitations. Therefore, based on the available information, in the opinion of the undersigned evaluator, Mr. Crumpler is **not** currently suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or properly assist in his defense. . . . Mr. Crumpler **is** currently competent to stand trial.

(R. 14 at 10 (emphasis in original).)

On December 10, 2007, the district court held a hearing to determine Appellant's competency to stand trial. (R. 47.) The court considered the Report as well as a November 14, 2005 letter from Dr. Alejandro Zapata. While the letter is not in the record on appeal, Appellant's counsel stated at

4

the competency hearing that "[t]he letter states [Appellant's] problems with concentration and bad memory and hearing voices." Appellant's counsel opined at the competency hearing that "all of those things will affect [Appellant's] ability to participate in the trial and to assist [counsel] in preparing for said trial." (*Id.* at 8.)

After hearing from the parties, the court found that the Report adequately addressed the information in Dr. Zapata's letter. (R. 47 at 8–9.) The court observed in a written order that Appellant "has appeared under control and conscious of events. He has responded appropriately to questions and has offered information or otherwise engaged properly in dialog with the Court and with counsel. The Court has seen no irrational or erratic conduct that would indicate a current competency deficit." (R. 17 at 3.) The court found Appellant to be competent, and "able to understand the nature and consequences of the proceedings and . . . [to] assist properly in his defense." (*Id.* at 4.) The court noted at the hearing and in its written order, however, that it would be "cognizant of the evaluator's suggestions as to the pace of any proceedings." (R. 47 at 9; R. 17 at 3.)

Soon after, Appellant was indicted for distributing and possessing with intent to distribute oxycodone, to which he initially pleaded not guilty. (R. 19; Arraignment Tr. 3–4.) Appellant changed his plea at a hearing, described below, on February 25, 2008. (R. 45.)

At the beginning of the hearing, the court informed Appellant that it would first ask questions to confirm that he was competent to enter a plea, and instructed Appellant that, if at any time he did not understand a question, he should point that out, and the court would repeat or rephrase the question. (R. 45 at 3.) After asking Appellant several simple questions about his age, work

5

experience, and education, the court stated:

> I'm going to be asking you some questions in a few moments about the plea
> agreement in the case, and if there's anything about that document that you don't
> understand, let me know and we'll take as much time as necessary to go through it
> and make sure that we both understand the terms that you're agreeing to.

(R. 45 at 5.) Appellant acknowledged this with a "Yes, sir." (*Id.*)

The court then asked about Appellant's medications. Appellant responded that he was on

several and that his condition was controlled by medication. (R. 45 at 6–9.) Appellant also indicated

that he had heard voices (auditory hallucinations) the night before, but stated that he had not heard

voices the day of the hearing and agreed to let the court know if he heard voices during the hearing.

(*Id.* at 9–10.) Appellant's counsel informed the court that communicating with his client had "been

a little more difficult than normal, but we've been able to communicate. I think he understands me

and I understand him." (R. 45 at 11.) He also indicated that he had no reason to believe that

Appellant did not understand the nature of the charges or that Appellant was impaired such that he

could not proceed at the hearing. (*Id.*)

The district court also spoke at length about Appellant's plea agreement. The court asked

Appellant whether he reviewed the agreement with his attorney, whether he felt that he understood

all the terms of the agreement, and whether the government accurately summarized the terms as he

understood them; Appellant answered affirmatively to each question. (R. 45 at 13, 16.) The court

then explained the waiver language:

> [Court]:     Now, there's some waiver language in your plea agreement. It's not unusual
>               to have this language in a plea agreement, but anytime it's present, of course,
>               I need to review it. And in your case, the waiver language is contained in
>               paragraphs 7 and 8. Let me go through this with you. In paragraph 7, you

agree that you would not file a motion for a decrease in the offense level based on what's called a mitigating role or a departure motion under the Sentencing Guidelines, Chapter 5, Parts H or K. And then in paragraph 8, you waive the right to appeal and the right to attack collaterally the guilty plea, the conviction, and the sentence, including any order of restitution. And let me confirm that you do understand that you're waiving or giving up those rights; is that correct?

[Appellant]:    Yeah.

[Court]:    Do you understand that when you waive the right to collaterally attack something, that means you're giving up the right to file a separate lawsuit to challenge it?

[Appellant]:    Yeah.

[Court]:    You understand that? Now, unless waived, and, of course, in this case you have waived the right to appeal your sentence, but unless waived, of course, you would have the right to appeal to the United States Court of Appeals for the Sixth Circuit. But you would not be able to withdraw from your plea agreement if your attorney's prediction or your belief about the guidelines were to be inaccurate.

[Appellant]:    Right.

[Court]:    You understand that?

[Appellant]:    Yeah.

[Court]:    And likewise, if the Court were to consider one or more of those statutory factors that we've just gone through, that wouldn't be a reason to withdraw from your plea agreement. If the sentence is more severe than you would expect, that would not be a reason to withdraw from your plea agreement. And, of course, I also need to advise you that if you are sentenced to prison you would not be released on parole because parole has been abolished in the federal system. And you understand all of that; correct?

[Appellant]:    (Nodding head affirmatively.)

(R. 45 at 22–24.)  The court reviewed the rights Appellant would give up if he entered a plea of guilty, and Appellant acknowledged that he understood.  (*Id.* at 24–25.)  The court also engaged in the following exchange with Appellant:

| | |
|---|---|
| [Court]: | Finally, I have asked you several questions here this afternoon.  I believe that you understood my questions based on your responses, but I want to confirm that that's true.  Did you understand all the questions I've asked you? |
| [Appellant]: | Yes, sir. |
| [Court]: | Is there any question that you have that you would like to ask me, something that you're not sure of that you need to clarify right now? |
| [Appellant]: | No.  No. |

(R. 45 at 31.)

Appellant's counsel further informed the court that he had "taken extra time to review the plea agreement with [Appellant] and discussed it with [Appellant's] wife" and stated that he believed Appellant was "competent and understands what he's doing."  (R. 45 at 32.)  The court acknowledged that Appellant was taking medication, but stated that, "based upon [the court's] observations here today, [the court] [did not] have any questions about [Appellant's] competency." (*Id.*)  The court accepted Appellant's plea of guilty, finding that he was "fully competent and capable of entering an informed plea" and that his plea was "knowing and voluntary."  (R. 45 at 29.) Judgment was entered on May 30, 2008; Appellant was sentenced to 120 months in custody and three years of supervised release on each of two counts, to be served concurrently.  (R. 40; R. 46.) Appellant filed a timely notice of appeal on June 2, 2008.  (R. 41.)

8

**II.**

Appellant contends that the district court violated Federal Rule of Criminal Procedure 11 when it allegedly failed to ensure that he understood that he was waiving his right to appeal by entering into his written plea agreement. (*See* Def.'s Br. 2.) Rule 11(b)(1)(N) provides that "[b]efore [a] court accepts a plea of guilty . . . the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Although the court discussed the waiver with Appellant during the rearraignment, Appellant's counsel contends that the court "failed to ensure that the prophylactic measures recommended by the psychologists . . . were utilized thus calling into serious question whether [Appellant's] waiver . . . was knowing and voluntary." (*Id.* at 10.)

This Court reviews *de novo* the question of whether a defendant validly waived his right to appeal his sentence. *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) (citing *United States v. Stubbs*, 279 F.3d 402, 411 (6th Cir. 2002)). It is well settled that a defendant may waive his right to appeal his sentence in a valid plea agreement; however, for a plea agreement to be constitutionally valid, the defendant must have entered into it knowingly and voluntarily. *Id.* at 483 (citing *United States v. Fleming*, 239 F.3d 761, 76–64 (6th Cir. 2001); *Stubbs*, 279 F.3d at 410). "'When a defendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement and will not review the sentence except in limited circumstances.'" *Id.* at 483 (citing *Stubbs*, 279 F.3d at 410).

Where a "defendant testified at his plea hearing that he had reviewed the plea agreement with counsel, that he understood all of the agreement's provisions, and that his guilty plea was not

coerced," and "there [was] nothing in the record to suggest that [the] defendant misunderstood the scope of his waiver of appellate rights," we "can only conclude that [the] defendant entered his plea agreement—and accepted the waiver of appellate rights contained therein—knowingly and voluntarily." *United States v. Calderon*, 388 F.3d 197, 200 (6th Cir. 2004) (citing *Fleming*, 239 F.3d at 764).

Here, it is undisputed that Appellant testified at his plea hearing that he had reviewed the plea agreement with his counsel; that he understood the terms of the agreement, including the waiver provisions; and that his plea was not coerced. (R. 45 at 13, 16.) As in *Calderon*, nothing in the record suggests that Appellant actually did not understand the scope of his waiver of appellate rights. Even now, Appellant does not allege in his brief that he misunderstood the terms of the plea agreement—he merely alleges that the district court did not sufficiently ensure that he understood the terms.[1]

---

[1] Rather than alleging that he misunderstood the terms of the plea agreement, Appellant complains that "at his sentencing hearing [he] learned for the first time that his criminal history was a level IV and not a level II as he had been led to believe by his attorney and by the Presentence investigation that had been furnished to him prior to his sentencing." (Def.'s Br. 11, 18.)

Appellant signed his plea agreement on February 20, 2008 and entered a plea of guilty at a hearing on February 25, 2008. (R. 38; R. 45.) The Presentence Investigation Report ("PSR") indicates that it was initially disclosed over two months later, on April 28, 2008, and was revised on May 15, 2008. (R. 42.) At the sentencing hearing, the district court noted that a typographical error in the PSR suggested that Appellant's criminal history category was II, but the PSR and its addendum contained the information necessary to conclude that Appellant's category was in fact a IV, and paragraph 34 of the PSR correctly indicated a criminal history category of IV. (R. 42 at 9, ¶ 34; R. 46 at 4.) So that Appellant's counsel could discuss the implications of the criminal history category with his client, the district court took a recess and offered to continue the sentencing to another date. Appellant's counsel declined the offer for a continuance and indicated that Appellant did not object to the PSR or its addendum. (R. 46 at 3–8.)

No. 08-5732
*United States v. Crumpler*

The record suggests that Appellant likely experienced greater-than-average difficulty in understanding the terms of his plea agreement. He was found to be competent, however, and the plea hearing transcript demonstrates that both his counsel and the court followed the Report's recommendations to take extra time to ensure that Appellant understood the agreement. Specifically, the district court gave Appellant ample opportunity to express any lack of understanding, asking Appellant numerous times whether he understood the proceedings and instructing Appellant to point out any areas of confusion. The court specifically explained the waiver provision at length, and Appellant acknowledged that he understood the terms of that provision. Finally, Appellant's counsel confirmed at the hearing that Appellant understood the agreement and was able to participate in the proceedings. For these reasons, we find that Appellant validly waived his right to appeal. Because a valid waiver of the right to appeal warrants the dismissal of an appeal that is filed in violation of the waiver, *United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005), we **DISMISS** this appeal.

---

Appellant correctly does not contend that this alleged surprise would constitute an independent reason to invalidate the waiver contained in his plea agreement, but rather asserts that it shows that his substantial rights were affected by the court's alleged error.

11