*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0400P (6th Cir.)
File Name: 03a0400p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

   *v.*

JOE DOUGLAS HELTON,
   *Defendant-Appellant.*

No. 02-5536

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 99-00022—Joseph M. Hood, District Judge.

Argued: September 10, 2003

Decided and Filed: November 12, 2003

Before: GIBBONS and SUTTON, Circuit Judges;
TARNOW, District Judge.*

———————

## COUNSEL

**ARGUED:** Gerald D. DeRossett, PILLERSDORF, DeROSSETT & LANE, Prestonsburg, Kentucky, for

———————

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

Appellant. Kenneth R. Taylor, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Gerald D. DeRossett, PILLERSDORF, DeROSSETT & LANE, Prestonsburg, Kentucky, for Appellant. Kenneth R. Taylor, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

———————

## OPINION

———————

SUTTON, Circuit Judge. In this, his second appeal from the same conviction, Joe Douglas Helton challenges the consecutive sentences he received for: (1) possession of ten grams of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); (2) use of a firearm during and in relation to a drug-trafficking offense in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm in violation of 18 U.S.C. § 922(g)(1). For the reasons that follow, we AFFIRM.

## I. BACKGROUND

In 1999, from June 2 to June 3, Helton and three others (Harold Dean McCarty ("McCarty"), Mildred Stanley Slusher ("Stanley") and Molly Minix Shepherd ("Minix")) used cocaine at Helton's residence while Helton and McCarty prepared half-gram packages of cocaine for sale. Realizing that they needed to restock their supply of cocaine (in view of the amount they had consumed), Helton and McCarty decided to exchange Helton's television for a half-gram of cocaine and $400. Stanley drove McCarty to a prospective seller. On the way, Stanley watched McCarty hide nineteen cocaine packages behind a traffic sign.

After agreeing to terms with the cocaine seller and after returning to Helton's residence to load the television onto his

truck, McCarty left to make the exchange. While he was gone, Stanley retrieved five or six of the recently-hidden packages for Helton, Minix and herself—all of whom were suffering from cocaine withdrawal—to consume. When McCarty learned that no cocaine remained at the hiding place, he accused Stanley of stealing the packages. She denied any knowledge of their whereabouts, but McCarty did not believe her and proceeded to shoot her. The bullet passed through Stanley's shoulder and exited out her lower back, but did not kill her.

At this point, Helton and McCarty drove Stanley to the hiding place behind the traffic sign where McCarty threatened her with the gun, again demanding that she tell them where the cocaine was. She again disclaimed any knowledge about the location of the cocaine, and McCarty fired at her head, missing her.

Helton and McCarty then drove Stanley to a strip mine where they tied cement blocks to her body and threw her into a nearby pond. In a fortuitous application of Murphy's Law, the pond turned out to be waist deep. Stanley did not drown.

In one last effort to "put her under," Helton took aim at Stanley three times and tried to shoot her three times. Each time, he missed the cement-laden Stanley. Apparently stymied, Helton and McCarty dragged Stanley from the pond and moved her to a nearby woods. In a conversation that history regrettably does not fully record, Helton and McCarty discussed what to do with Stanley next.

Happily for Stanley, they did not have a chance to follow through on their next plan. Helton left the scene and sleep overcame McCarty, allowing Stanley to escape to a nearby residence where she was airlifted to the University of Kentucky Medical Center. There, she underwent surgery and eventually recovered.

The United States District Court for the Eastern District of Kentucky severed the trials of McCarty and Helton. In Helton's trial, a jury found him guilty on all three counts in the indictment: (1) possession of ten grams of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count I); (2) use of a firearm during and in relation to a drug-trafficking offense in violation of 18 U.S.C. § 924(c) (Count II); and (3) possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count III).

In sentencing Helton, the district court cross-referenced his § 922(g) conviction for possession of a firearm in accordance with U.S.S.G. § 2K2.1(c)(1)(A), concluding that he had used the firearm in connection with an attempt to commit another offense. Under U.S.S.G. § 2X1.1(c), the district court determined that the attempt was expressly covered by the Guidelines' provision for attempted murder, *see* U.S.S.G. § 2A2.1(a)(1), which creates a base-offense level of twenty-eight. With a three-point enhancement for Stanley's "serious bodily injury," Helton's base-offense level for Counts I and III (grouped under U.S.S.G. § 3D1.2) became thirty-one. Past criminal convictions placed Helton in a level II criminal history category, giving him a sentencing range on Counts I and III of 121–151 months. The district court sentenced him to 131 months on both counts. The court also sentenced Helton to a sixty-month consecutive sentence under 18 U.S.C. § 924(c)(1)(A)(ii) (use of a firearm during a drug-trafficking offense). All sentences considered, Helton received a total sentence of 191 months.

Helton appealed his convictions and sentences on a number of issues, including inappropriate cross-referencing. He claimed the district court should have used U.S.S.G. § 2X1.1(a) as its cross-referencing guideline and should have applied U.S.S.G. § 2A2.2 for aggravated assault (for a base-offense level of fifteen), because (1) he did not have the requisite intent for murder, and (2) he acted under duress in view of several threats by McCarty. The Government cross-appealed, seeking a four-point (rather than three-point)

enhancement of Helton's base offense level, due to the extent of Stanley's injury.

We affirmed Helton's convictions and agreed that the district court appropriately applied the attempted-murder cross reference. *See United States v. Helton*, 32 Fed. Appx. 707 (6th Cir. 2002) ("*Helton I*"). At the same time, we agreed with the Government that Stanley had sustained a "permanent or life-threatening bodily injury," which warranted a four-point rather than a three-point enhancement of Helton's base offense level. *See id.* at 716 (citing U.S.S.G. § 2A2.1(b)(1)(A)); U.S.S.G. § 1B1.1 cmt. n.1(h). In view of this conclusion, we remanded the case for resentencing. *See Helton I*, 32 Fed. Appx. at 709.

In the same week that we ruled on Helton's original appeal, we released *United States v. Stubbs*, 279 F.3d 402 (6th Cir. 2002). In *Stubbs*, we reversed a mandatory sixty-month sentence—resulting from cross-referencing under U.S.S.G. § 2K2.1(c)(1)(A)—imposed on a defendant convicted of violating 18 U.S.C. § 924(o). We concluded that this increase in the minimum sentence of the defendant was "more fundamental [than sentencing in excess of the statutory maximum, prohibited by *Apprendi v. New Jersey*, 530 U.S. 466 (2000)] because Defendant was indicted for one offense and sentenced under another simply by operation of a cross-reference in the sentencing guidelines . . . ." *Stubbs*, 279 F.3d at 409. Unlike "relevant conduct" guidelines calling for a determinate increase in a sentencing base-offense level, *Stubbs* reasoned, the cross-referencing provision "required the district court to calculate [the defendant's base-offense level] *as if* his offense of conviction had been murder," a charge not in the indictment. *Id.* at 408 (emphasis in original). Relying on several post-*Apprendi* decisions, we concluded that cross-referencing under these circumstances violated the defendant's Fifth and Sixth Amendment rights.

Invoking *Stubbs* (and *Apprendi)*, Helton claimed on remand that he could be sentenced only for offenses for which he had

been indicted and convicted by a jury, which would not include attempted murder. The district court disagreed. It instead sentenced Helton in accordance with the four-point enhanced base-offense level for attempted murder and for a "permanent or life-threatening bodily injury." Helton thus received 120 months on Count III, sixty months on Count II, and an additional eighteen months on Count I, all to be served consecutively, for a total sentence of 198 months. The court entered judgment on April 16, 2002, and Helton filed this appeal one week later.

## II.  DISCUSSION

The legal issues raised in this case do not contain the same suspense as the facts. We review the district court's legal conclusions *de novo* and its fact-findings for clear error. *See United States v. Griffis*, 282 F.3d 443, 446 (6th Cir. 2002).

### A.  The Scope of the Remand.

The Government initially challenges our authority to reach Helton's claim that *Stubbs* prohibits the attempted-murder cross referencing. In its view, this Court's limited remand in *Helton I* did not authorize the district court to do anything but apply the four-point enhancement prompted by the fact that Stanley suffered a "permanent or life-threatening bodily injury." In one sense, the Government is correct. When we issue a remand order that is limited by its terms to a discrete issue, the district court obtains jurisdiction to address only that issue. *See United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). Where, however, "an appellate court simply vacates a sentence and remands to the district court for 'resentencing,' that order is considered a general one that allows the district court to resentence the defendant *de novo*." *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997); *see also United States v. Hebeka*, 89 F.3d 279, 284–85 (6th Cir. 1996). Unless otherwise specified, a remand order is presumed to be general in nature. *See Moore*, 131 F.3d at 598.

In this instance, *Helton I* remanded the case to the district court "for resentencing consistent with this opinion." *Helton I*, 32 Fed. Appx. at 716. In view of this general language and in view of the presumption in favor of a general remand, we conclude that the district court had authority to review Helton's argument under *Stubbs*. So, accordingly, do we.

## B. The Cross-Referencing Challenge.

Like the defendant in *Stubbs*, Helton claims that the district court sentenced him as if he had committed a crime (attempted murder) for which he was never charged and for which no jury found him guilty beyond a reasonable doubt. Like the defendant in *Stubbs*, he claims that the Guidelines may not be applied to increase his mandatory *minimum* sentence in this manner, unless a jury first finds beyond a reasonable doubt that he engaged in the alleged conduct. And like the defendant in *Stubbs*, he claims that any such sentencing violates his Fifth and Sixth Amendment rights.

*Stubbs*, however, is no longer good law. Neither that decision nor the precedents upon which it relied, *see United States v. Ramirez*, 242 F.3d 348 (6th Cir. 2001) and *United States v. Flowal*, 234 F.3d 932 (6th Cir. 2000), have survived a recent Supreme Court decision delineating the scope of *Apprendi*. In *Harris v. United States*, 536 U.S. 545 (2002), decided after *Stubbs*, the Supreme Court held that the constitutional mandates of *Apprendi* do not apply to the Sentencing Guidelines when the defendant's sentence remains below the *maximum* sentence authorized by statute. In that setting, the Court concluded, the Constitution permits a judge to make factual findings that increase a defendant's mandatory minimum sentence under the preponderance-of-the-evidence standard. *Id*. at 568–69. "Within the range authorized by the jury's verdict," the Court reasoned, "the political system may channel judicial discretion—and rely upon judicial expertise—by requiring defendants to serve minimum terms after judges make certain factual findings." *Id*. at 567. Under *Harris*, once the jury has determined guilt,

the district court may sentence the defendant to the statutory minimum, the statutory maximum, or anything in between, based on its (proper) application of the Guidelines and based on its (permissible) preponderance-of-the-evidence findings under the Guidelines. So long as the judge does not sentence the defendant beyond the maximum levels authorized by the statute under which the defendant was convicted, *Harris* makes clear that the district court does not run afoul of *Apprendi* or the constitutional rights that it protects.

Recent precedent from this Court confirms this conclusion. As we recently have said, "a fact that merely activates or increases a statutorily mandated minimum sentence may, at the legislature's discretion, be submitted to a judge and proved only by a preponderance of the evidence." *United States v. Chapman*, 305 F.3d 530, 536 (6th Cir. 2002). *See also United States v. Copeland*, 321 F.3d 582, 603 (6th Cir. 2003) (holding that under *Harris* "a defendant cannot demonstrate an *Apprendi* violation where he has been sentenced to a term of years *encompassed* by [the statute under which he is charged]") (emphasis in original); *United States v. Lawrence*, 308 F.3d 623, 635 (6th Cir. 2002) (noting that while this Court had held in several opinions that *Apprendi* applied to statutory minimums, *Harris* overruled that conclusion). In the aftermath of *Harris*, we also have specifically concluded that "*Flowal*, *Ramirez* . . . and all other cases before this Circuit in which we have held that *Apprendi* applies to mandatory minimum sentences, are overruled to the extent they conflict with *Harris* . . . ." *United States v. Leachman*, 309 F.3d 377, 383 (6th Cir. 2002). The decisions upon which *Stubbs* relied did not survive *Harris*. It follows that the same is true of *Stubbs*.

Applied here, *Harris* and our recent precedents establish that the district court's sentence fell well within constitutional limits. In this instance, the district court on remand sentenced Helton to consecutive sentences totaling 198 months. As no single sentence exceeded the maximum permitted by statute

under any of the three counts on which the jury convicted him, Helton's constitutional challenge cannot succeed.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM.