SUHRHEINRICH, Judge.
Defendant-Appellant Jack Chilingirian (“Defendant”) appeals from his resentencing upon remand. In this appeal he challenges the eighty-seven month sentence imposed. For the reasons that follow, we reverse and remand.
I. Background
The case was previously heard in this Court and remanded for resentencing. See United States v. Chilingirian, 280 F.3d 704 (6th Cir.2002). We incorporate the facts of the case by reference here, and supplement as necessary.
On April 29, 1999, after a bench trial, the district court found Defendant guilty as to one count of conspiracy to launder monetary instruments in violation of 18 *785 U.S.C. § 1956(a) & (h) (“Count 33”).[1] The presentence report (“PSR”) used the money laundering guideline, U.S.S.G. § 2S1.1 (1998), which called for a base offense level of 23, plus five levels as the value exceeded $1,000,000.00. With a total offense level of 28 and a Criminal History Category I, the PSR recommended a guideline range of seventy-eight to ninety-seven months. Instead, the district court used the fraud guideline, U.S.S.G. § 2F1.1, and calculated a total offense level of 20 and Criminal History Category I, which resulted in a guideline range of thirty-three to forty-one months. The district court imposed a term of thirty-seven months’ imprisonment, two years of supervised release, and restitution in the amount $335,167.50. Defendant appealed on various grounds. The Government filed a cross-appeal, challenging the district court’s use of the fraud guideline, U.S.S.G. § 2F1.1, instead of the sentencing guideline for money laundering, § 2S1.1. This Court rejected Defendant’s challenges to his conviction and sentence. However, regarding the cross-appeal, we determined that money laundering guidelines should have been used in imposing sentence in light of the fact that “[t]he money laundering in this case was not minimal nor incidental, and it appears to have been funneled through the client trust account in order to make it appear legitimate and to further the radar technology/fraud scheme.” Chilingirian, 280 F.3d at 714. We remanded with instructions to resentence Defendant in accordance with the money laundering guideline. Id.
On April 9, 2002, after remand, the probation office supplemented the original presentence report (“SPSR”). The SPSR noted that, on remand, the first task was to determine which version of the guidelines to apply. The SPSR noted that the last date of the offense of conviction is the controlling date for ex post facto purposes. See U.S.S.G. § 1B1.11 (providing that the district court shall use the Guidelines Manual in effect on the date the defendant is sentenced, unless its application would violate the ex post facto clause, in which case the last date of the offense of conviction is controlling). Here, the offense conduct for Count 33 ended in October 1996, thus the 1995 edition of the Guidelines Manual and the 2001 version would be the two applicable versions. The SPSR calculated Defendant’s sentence under both editions. The *786 SPSR calculated a total offense level of 29 under § 2S1.1 of the 1995 guidelines, and a total offense level of 32 under § 2S1.1 of the 2001 version. Because it produced a more favorable guideline level, the SPSR used the 1995 guideline. Thus, with a total offense level of 29 and a Criminal History Category I, the guideline range was eighty-seven to one hundred eight months.
Defendant filed objections to the SPSR. The district court held a resentencing hearing on May 23, 2002. Over Defendant’s objection, the court applied the 1995 version of the guidelines.
The district court next ruled that the amount of laundered funds was $2.7 million. The court also rejected Defendant’s attack on the restitution order. The court set the total offense level at 29. Combined with a Criminal History Category score of I, the guideline range was eighty-seven to one hundred-eight months. The district court resentenced Defendant to a custodial term of eighty-seven months, all other terms to remain unchanged from the original judgment. Defendant filed his pro se notice of appeal.
Defendant, represented by counsel, presents three issues on appeal: (1) whether Defendant’s statutory sentence of eighty-seven months violates Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (2) whether the district court erred in calculating Defendant’s sentence; and (3) whether the district court erred in requiring Defendant to pay restitution.
II. Analysis
A. Apprendi
The gist of Defendant’s first argument is as follows. The offense-defining statute, 18 U.S.C. § 1956, has a maximum sentence of twenty years. However, the operation of the offense-defining statute in conjunction with § 2S1.1 of the sentencing guidelines results in a relevant maximum sentence of twelve months. The guidelines must be considered in determining the relevant maximum sentence because 18 U.S.C. § 3553(a)(4)(A) mandates the application of the sentencing guidelines. In other words, every factor which increases a defendant’s sentence, including the application of the guideline sentencing enhancements, must be charged in the indictment and proven to a jury beyond a reasonable doubt.
In Apprendi, the Supreme Court held that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Apprendi, 530 U.S. at 490 (emphasis added). In Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the Supreme Court held that anything that increases the statutory minimum is a sentencing factor and not an element, and not subject to the rule of Apprendi. The majority in Harris stated in relevant part:
[wjhether chosen by the judge or the legislature, the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt. When a judge sentences the defendant to a mandatory minimum, no less than when the judge chooses a sentence within the range, the grand and petit juries already have found all the facts necessary to authorize the Government to impose the sentence. The judge may impose the minimum, the maximum, or any other sentence within the range without *787 seeking further authorization from those juries-and without contradicting Apprendi
Id. at 565 (emphasis added).
Relying on Harris, this Court has already ruled Apprendi does not apply to sentencing enhancements within the guideline range. United States v. Stines, 318 F.3d 912, 916 (6th Cir.2002) (stating that “[ajlthough it is true that the quantity determined by the district court elevated the mandatory guideline minimum sentence, Harris tells us that Apprendi does not invalidate that increase”; holding that sentencing enhancements based on drug type and quantity factors did not affect the statutory maximum and therefore Apprendi was not implicated); see also United States v. Copeland, 321 F.3d 582, 603 (6th Cir.2003) (same); United States v. Wilson, 249 F.3d 366, 380 (5th Cir.2001) (rejecting the defendant money-launderer’s argument that an enhancement under the money laundering guideline based on the value of funds laundered must be submitted to the jury; upholding the twenty-year sentence imposed by the district court).
Ring, issued the same day as Harris, does not support Defendant’s argument. Ring was a capital sentencing case. The Arizona statute made first degree murder punishable by life imprisonment or death. However, the death penalty could be imposed only in accordance with a separate state statute which required further fact findings to be made by the judge alone. The Supreme Court held that, because the aggravating factors increased the available sentence from life in prison to death, they could not be found by the trial judge but had to be determined by the jury. Ring, 536 U.S. at 609. Ring is therefore distinguishable.
In short, this contention is without merit.
B. Sentence Calculation
Defendant argues in the alternative that the district court miscalculated his offense level under both the 1995 and 2001 Guidelines. Specifically, Defendant argues that his guideline range, rather than being computed at level 29 under the 1995 version, or 32 under the 2001 version, should have been calculated at level 26 under both versions. He makes several arguments in support of each.
1. 1995 Guidelines
As noted, Defendant claims that his total offense level under the 1995 guideline should have been 26, not 29, because his conviction should be construed as a conspiracy to commit money laundering under 18 U.S.C. § 1956(h), not the substantive offense of money laundering in violation of 18 U.S.C. § 1956(a)(l)(A)(i). Defendant therefore claims that the district court should have applied § 2Sl.l(a)(2) for a base level of 20 for other violations of 18 U.S.C. § 1956, because he was found guilty only of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). Instead, the district court determined Defendant’s base offense level by applying § 2Sl.l(a)(l).
The 1995 version provides in relevant part as follows:
(a) Base Offense Level:
(1) 23, if convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A);
(2) 20, otherwise.
(b) ...
(2) If the value of the funds exceeded $100,000, increase the offense level as follows:
*788 Value (Apply the Greatest) Increase in Level
(F) More than $1,000,000 add 5
(G) More than $3,500,000 add 6
U.S.S.G. § 2S1.1 (1995).
We find no error. Under § 1956(h), “[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.” 18 U.S.C. § 1956(h) (West 2003). Thus, in determining Defendant’s sentence, we look to the object offense and use its base offense level. See United States v. Haehle, 227 F.3d 857, 862 (7th Cir.2000) (stating that “for a person who conspires to violate § 1956(a)(1)(A), the sentence under § 1956(h) must be the same as for the person who commits the substantive offense”; similarly, “[f]or a person who conspires to violate § 1956(a)(1)(B), the sentence follows that substantive offense”); see also id. at 861-62 (rejecting the defendant’s argument that the use of level 23 was wrong because he pleaded guilty to a violation of § 1956(h), not § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A)).
Count 33 explicitly charged Defendant and Jack Rashid with engaging in a conspiracy to both promote and conceal the proceeds of their fraudulent radar technology scheme through the use of client trust accounts established by Defendant for this purpose. The indictment twice specifically referenced “Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)® and 1956(h).” In its “General Finding Pursuant to Rule 23,” the district court specifically found Defendant guilty of the charge of “COUNT THIRTY-THREE (18 U.S.C. §§ 1956(a)(1)(A)®, 1956(a)(1)(B)®, and 1956(h)-CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS).” The amended judgment states that Defendant was found guilty of “18 USC 1956(a)(l)(A)(I), 1956(a)(l)(B)(I), and 1956(h).” Finally, at resentencing, the district court specifically noted that “[o]n April 29, 1999, the Court issued a general finding pursuant to Rule 23 finding the defendant guilty of Count 33, alleging a violation of — the following sections of — 18 U.S.C.1956(a)(l)(A)(i), 1956(a)(1)(B)®, and 1956(h).” Thus, the district court correctly looked to § 1956(a)(1)(A)® and § 1956(a)(1)(B)®, the object offenses of the conspiracy count in determining the base offense level for Defendant’s conviction under § 1956(h).
The district court also did not err in using the base offense level of 23 set forth in § 2S1.1(a)(1), based on the violation of § 1956(a)(1)(A)®, rather than the base offense level of 20 under § 2S1.1(a)(2), based on the violation of § 1956(a)(1)(B)®. Section lB1.2(d) states that “a conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.” U.S.S.G. § lB1.2(d) (1995). The commentary explains that
[sjubsection (d) provides that a conviction on a conspiracy count charging conspiracy to commit more than one offense is treated as if the defendant had been convicted of a separate conspiracy for each offense that he conspired to commit. For example, where a conviction on a single count of conspiracy establishes that the defendant conspired to commit three robberies, the guidelines are to be applied as if the defendant had been convicted on one count of conspiracy to commit the first robbery, one count of conspiracy to commit the second robbery, and one count of conspiracy to commit the third robbery.
*789 U.S.S.G. § 1B1.2, cmt. n.4 (1995).[2]
Thus, here, for sentencing purposes it was proper to treat Defendant as having been convicted of one count of conspiracy to commit a violation of § 1956(a)(1)(A)®, and one count of conspiracy to commit a violation of § 1956(a)(1)(B)®. Next, U.S.S.G. § 3D1.2(d) directs that we group together the “two counts.” U.S.S.G. § 3D1.2(d) (stating that “[ojffenses covered by [§ 2S1.1] are to be grouped under this subsection”). See also U.S.S.G. § 3D1.2, cmt. n.6 (stating that “[a] conspiracy ... to commit an offense is covered under subsection (d) if the offense that is the object of the conspiracy ... is covered under subsection (d)”). See generally U.S.S.G. ch 3, pt. D, introductory cmt. (1995) (stating that “[t]he rules in this Part are to be used to determine the offense level for such composite offenses [e.g. conspiracy] from the offense level for the underlying offenses”). Finally, U.S.S.G. § 3D1.3 directs that “[i]n the case of counts grouped together ' pursuant to § 3D1.2(d) ... [w]hen the counts involve offenses of the same general type to which different guidelines apply, apply the offense guideline that produces the highest offense level.” U.S.S.G. § 3D1.2(b) (1995). Here, the highest offense level is 23. In sum, the district court did not err in setting Defendant’s base offense level at 23 rather than 20.
Defendant also asserts that Count 33 cannot be construed to charge substantive money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)® because it fails to describe sufficiently conduct that would constitute such a violation. He adds that the three paragraphs of that count parrot the language of 18 U.S.C. §§ 1956(a)(1)(A)® and (B)(i), without providing any reference to specific conduct by the defendants that would constitute violations of those provisions. Thus, he claims that this paragraph is insufficient to charge a violation of any part of 18 U.S.C. § 1956 because it fails to apprise him of the underlying conduct. In addition, Defendant argues that Count 33, as a single count, cannot constitutionally charge both violations of the substantive crime of money laundering and conspiracy to commit money laundering.
As the Government points out, the foregoing arguments are veiled attempts at arguing vagueness and duplicity in the indictment, and should have been raised in pretrial motions rather than as sentencing issues. See Fed.R.Crim.P. 12(b)(3)(B); United States v. Adesida, 129 F.3d 846, 849 (6th Cir.1997) (holding that duplicity must be raised prior to trial or waived).
2. 2001 Guidelines
Defendant also claims that the district court miscalculated his sentence under the 2001 sentencing guidelines, to arrive at a total offense level of 32, rather than 26. He finds several errors. First, he con *790 tends that the district court calculated his base offense level under the wrong guideline because it erroneously found him responsible for the underlying mail and wire fraud. Second, he argues that the district court made a new, higher loss calculation than utilized at his initial sentencing, without any evidence to support the change. Third, he asserts that the district court erred in applying an enhancement for making a false statement during the course of a bankruptcy proceeding.
The 2001 version of § 2S.l.l(a) states:
(a) Base Offense Level:
(1) The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined; or
(2) 8 plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the laundered funds, otherwise.
U.S.S.G. § 2Sl.l(a) (2001).
a. Relevant Conduct
At resentencing, over Defendant’s objection, the district court sentenced Defendant under § 2Sl.l(a)(l), reasoning that Defendant was responsible for the underlying mail and wire fraud under the Relevant Conduct provision, § lB1.3(a)(l)(A). Defendant contends that the district court failed to make sufficient findings to hold him responsible for the underlying offense and thus application of § 2Sl.l(a)(l) is unsupported by the record. Thus, Defendant claims that his base offense level should have been calculated under § 2Sl.l(a)(2).
The SPSR noted that the underlying offense from which the laundered funds were derived is fraud. Stating that Defendant “committed the underlying offense or would be accountable for the underlying offense under the relevant conduct provisions of § lB1.3(a)(l)(A),” the SPSR applied § 2Sl.l(a)(l). Under the fraud guidelines, § 2B1.1, the base level is 6, plus eighteen levels for more than $2,5000,000 in funds, § 2Bl.l(b)(l)(J), plus four levels for more than fifty victims, § 2Bl.l(b)(2)(B), and two levels as the offense involved a misrepresentation during the course of a bankruptcy proceedings, § 2Bl.l(b)(7)(B). This resulted in a total offense level of 30. Because Defendant was convicted under § 1956(h), an additional two points were added, resulting in a base offense level of 32. See id.
Had Defendant been sentenced under § 2Sl.l(a)(2), his base offense level would be 8, plus 18 for the value of funds involved, § 2Bl.l(b)(l)(J), plus two more levels under § 2Sl.l(b)(2)(B) because Defendant was convicted under 18 U.S.C. § 1956(h). This would set his total offense level at 28, with a corresponding sentencing range of seventy-eight to ninety-seven months. U.S.S.G., Ch. 5, Pt. A (2001). Thus, the sentencing range would be lower than that obtained under the 1995 version, and it would be possible for Defendant to receive less than eighty-seven months, his current sentence.
Section lB1.3(a)(l)(A) makes a defendant accountable for “all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant.” At the time of Defendant’s resentencing, Fed.R.Crim.P. 32(c)(1) provided that “[a]t the sentencing hearing ... [f]or each matter controverted, the court must make either a finding on the allegation or a determination that *791 no finding is necessary because the controverted matter mil not be taken into account in, or will not affect, sentencing.” Fed.R.Crim.P. 32(c)(1).[3] This Court requires sentencing courts to make independent findings on any controverted matters. United States v. Tackett, 113 F.3d 603, 613 (6th Cir.1997). This Court requires “ ‘literal compliance’ with this provision.” Id. When the district court fails to make a factual finding, “this court must remand for resentencing.” United States v. Edgecomb, 910 F.2d 1309, 1313 (6th Cir.1990).
In response to Defendant’s objection, the district court ruled as follows:
Objection 5 of the defendant is overruled on the law. And I make as to objection 5 the following comment. As the defendant was involved in the underlying offense and the facts in this case show that he either committed, aided or abetted, counseled, commanded, induced, procured, or wilfully caused the underlying offense, guideline of Section 2Sl.l(a)(2) cannot be utilized in setting the base offense level.
The Government claims that the record supports sentencing Defendant under § 2Sl.l(a)(l) as a direct money launderer for purposes of calculating his offense level under the 2001 guidelines. However, the district court’s conclusory statement fails to meet Rule 32’s requirement of independent or particularized findings of fact. See United States v. Osborne, 291 F.3d 908, 911-12 (6th Cir.2002) (district court’s summary acceptance of presentence report was insufficient to dispose of the defendant’s challenge to presentence report’s finding holding him responsible for a specified amount of methamphetamine); United States v. Corrado, 227 F.3d 528, 540-41 (6th Cir.2000) (holding that district court erred in failing to set out findings as to any of the controverted issues; noting that the district court “either summarily adopted the findings of the presentence report or simply declared that the enhancement in question was supported by a preponderance of the evidence”); Tackett, 113 F.3d at 614 (holding that mere recitation of the presentence investigation report’s findings does not satisfy Rule 32 and that the record must reflect an independent evaluation of the evidence). Upon remand, the district court will have to conform its ruling on this aspect of its sentencing calculation to the dictates of Rule 32 and our caselaw.
b. Amount of Funds
Next, Defendant argues that the district court erred in setting the value of funds at $2.7 million under the 2001 guidelines at resentencing. At the initial sentencing the Government alleged, and the district court found, that Defendant was responsible for $2,267 million in laundered funds. Defendant alleges that this Court’s earlier remand for resentencing was not a general *792 remand. Second, he argues that the sentencing court failed to provide objective reasons for imposing a more stringent sentence at resentencing, without providing an objective basis for doing so.
Under the 1995 version of the guideline, a specific-offense enhancement of six is required where the amount of laundered funds is between $2 million and $3.5 million. U.S.S.G. § 2S1.1 (b)(2)(G) (1995). Thus, the precise amount of the funds in excess of $2 million was not relevant. However, under the 2001 money laundering guideline, the cross-reference to the calculations set forth in § 2B1.1 now contains a break between $1 million (sixteen-level increase) and $2.5 million (eighteen-level increase). Thus, the Government filed a resentencing memorandum, with exhibits, establishing the total amount of money laundered through both of Defendant’s trust accounts as totaling over $2.7 million.[4]
Even if we consider the issue, Defendant’s claim should fail. To begin, our remand order simply states that “we REVERSE the district court’s sentencing order and REMAND the case to the district court with instructions to re-sentence Jack Chiligirian in accordance with the money laundering guideline.” Chilingiricm, 280 F.3d at 714 (emphasis in original). In United States v. Helton, 349 F.3d 295 (6th Cir.2003), we held that “[wjhere [ ] an appellate court simply vacates a sentence and remands to the district court for ‘resentencing, that order is considered a general one that allows the district court to resentence the defendant de novo.’ ” Id. at 299 (citations omitted). Further, even if it is deemed “a remand order that is limited by its terms to a discrete issue [and] the district court obtains jurisdiction to address only that issue,” the “discrete” issue is proper application of the money laundering guidelines, of which the amount of funds is a component. Id. Defendant’s argument is without merit.
We note that Fed.R.Crim.P. 32(c)(1) (now, Fed.R.Crim.P. 32(i)(3)(B)) requires that for any controverted issue, the district court make specific factual findings to support its conclusion. Here, the court satisfied this requirement. At the resentencing hearing, the district judge made the following findings of fact:
The majority of the funds that the defendant is being held accountable for comes from the first client trust fund. The review of funds show payments of 345 thousand and some odd dollars to the defendant, $1,788,000 and some odd dollars to Jack Rashid, and 600 thousand and some odd dollars related to Rashid brought, for a total of two thousand — 2,736,052.
Defendant also argues that the district court was required to provide objective reasons for the increase in his sentence upon remand, citing North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The district judge complied with this requirement, by citing objective information, such as the fact that co-conspirator Jack Rashid was found guilty of laundering $2.7 million. Also, on remand, the Government submitted a memorandum with a detailed financial spreadsheet supporting the higher figure. The district court clearly stated its reasons for the higher figure, and these reasons have objective support in the record.
*793 c. False Statement
Defendant argues that the district court erred in applying a two-level enhancement for misrepresentation or fraudulent action made in the course of a bankruptcy proceeding under U.S.S.G. § 231.1(b)(7)(B) (2001). He argues that the district court did not apply the enhancement at the initial sentencing and therefore cannot apply it at resentencing. The offense level enhancement for misrepresentation during a bankruptcy proceeding, U.S.S.G. § 2Bl.l(b)(7)(B), did not exist until November 1, 2001.[5]
In the re-sentencing remand in 2002, Defendant never objected to the enhancement, before the district court. Under plain error review, it is not clear and obvious that the enhancement was erroneous. Defendant also attempts to invoke the Pearce requirement that the judge must cite objective reasons for increasing the sentence on remand. But it is not clear and obvious that this requirement applies in a case, such as the present one, where a defendant’s appeal failed and the remand was granted solely on the basis of a successful cross-appeal by the government. See Pearce, 395 U.S. at 725 (“Due process of law, then, requires the vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial.”) (emphasis added).[6]
C. Restitution
Defendant argues that the district court erred in imposing restitution in the amount of $335,167.50. The Government counters that Defendant waived the issue because he did not raise this objection at the time of his first sentencing in 1999.
Although the transcript of the original sentencing hearing does not reflect an explicit objection to the order of restitution, the Addendum to the Presentence Investigation Report filed on October 13, 1999, reveals that Defendant actually objected to the amount of restitution, claiming that it was “inaccurate.”[7] On the other hand, at the original sentencing, defense counsel contended that “the correct amount of restitution in this case is $335,167.50” which represented only “checks that were issued from [Chilingirian’s] trust account to [Chilingirian] personally.” The district court assessed restitution in the same amount. Defendant did not challenge this amount on direct appeal. Having forfeited the claim in the previous appeal, it is not cognizable now. See Unit *794 ed States v. McKinley, 221 F.3d 716, 718-19 (6th Cir.2000); cf. United States v. Hebeka, 89 F.3d 279, 284-85 (6th Cir.1996).
III. Conclusion
For the foregoing reasons, we REVERSE the district court’s sentencing order and REMAND the case to the district court for the limited purpose of recalculating Defendant’s sentence under the 2001 version of the guidelines in accordance with this opinion. If that calculation results in a lower total offense level than the current calculation under the 1995 version, the district court is further instructed to resentence Defendant in accordance with the 2001 guideline. Otherwise, Defendant should be resentenced under the 1995 version. SO ORDERED.

. Count 33 of the Third Superseding Indictment provides as follows:
COUNT THIRTY THREE (18 U.S.C. §§ 1956(a)(l)(A)(i), 1956(a)(l)(B)(i), and 1956(h) — CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS)
That from in or about December of 1994 through in or about October of 1996, in the Eastern District of Michigan, Southern Division, and elsewhere, defendant Jack Rashid and defendant Jack Chilingirian, knowing that the property involved represented the proceeds of some form of unlawful activity, as defined in Title 18, United States Code, Section 1956(c)(1), did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with other persons whose names are known and unknown to the Grand Jury, to conduct and cause to be conducted financial transactions affecting interstate and foreign commerce which involved the proceeds of specified unlawful activity, that is, mail and wire fraud, felonies under Title 18, United States Code, Sections 1341 and 1343, with the intent to promote the carrying on of specified unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of such unlawful activity; all in violation of Title 18, United States Code, Sections 1956(a)(l)(A)(i), 1956(a)(l)(B)(i) and 1956(h).
All in violation of Title 18, United States Code, Section 1956(h).
(emphasis in original).

. Further support for this result derives from Application note 5 to § IB 1.2, which states that Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.
U.S.S.G. § IB 1.2, cmt. n.5 (1995) (emphasis added). See United States v. Tocco, 306 F.3d 279, 292-93 (6th Cir.2002) (remanding for district court to determine whether acts of extortion alleged in connection with conspiracy conviction were relevant conduct; noting that § IB 1.2(d), cmt. n.5 was the applicable guideline given the jury verdict in the case), cert. denied, 539 U.S. 926, 123 S.Ct. 2573, 156 L.Ed.2d 602 (2003).
Here, the district court convicted Defendant of the object offense of § 1956(a)(l)(A)(i).

. On December 1, 2002, amendments to the Federal Rules of Criminal Procedure replaced Rule 32(c)(1) with Rule 32(i)(3). Rule 32(i)(3)(B) states that "for any disputed portion of the presentence report or other controverted matter” during sentencing, the court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.” Fed.R.Crim.P. 32(i)(3) (2003). "This new rule attempts to address confusion in the courts over whether, under the prior rule, they were required to make rulings on every objection to the presentence report or only those that potentially would affect the sentence.” United States v. Treadway, 328 F.3d 878, 885 n. 3 (6th Cir.2003) (citing advisory committee's notes to Fed.R.Crim.P. 32(i)(3)), cert. denied, — U.S. -, 124 S.Ct. 166, 157 L.Ed.2d 109 (2003). Prior to these revisions, the Sixth Circuit had interpreted the rule in a manner consistent with Rule 32(i)(3)'s clarification. United States v. Darwich, 337 F.3d 645, 666 (6th Cir.2003).

. It does not appear that Defendant actually challenges the $2.7 million dollar figure.

. Even though the enhancement was enacted after the offense was committed, Defendant did not make an ex post facto argument before this Court or the district court. Thus, even if, arguendo, this Court could consider the ex post facto issue, review would be under the plain error standard, which requires a clear and obvious error that affects substantial rights. United States v. Clinton, 338 F.3d 483, 487 (6th Cir.2003). As stated in United States v. Monus, 356 F.3d 714, 718 (6th Cir.2004), "clarifications of the guidelines have restroactive application while substantive changes do not.” (citation omitted). It is not clear and obvious that § 2B 1.1 (b)(7)(B) constitutes a substantive change, as opposed to a mere clarification, of the prior U.S.S.G. § 2F1.1(b)(3)(B). There is no clear and obvious ex post facto violation.

. Although the Pearce language refers only to successful attacks to convictions, the Pearce requirement of objective reasons also applies to re-sentencing. United States v. Flood, 965 F.2d 505, 513 (7th Cir.1992). But, as explained, it is not clear and obvious that the requirement would apply where, as here, Defendant's appeal of the sentence had failed.

. Defendant also objected to the restitution order in briefs submitted to the court before resentencing. (Pro Se Motion by Chilingirian for Judgment of Acquittal, dated March 15, 2002, at 15).