RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0168P (6th Cir.)
File Name: 04a0168p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 02-2026

MARSHALL DWAYNE
HUGHES,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 94-80665—Bernard A. Friedman, District Judge.

Argued: January 27, 2004

Decided and Filed: June 4, 2004

Before: MARTIN, RYAN,[*] and MOORE, Circuit Judges.

_____

[*] Although Judge Ryan was not present for the oral argument in this appeal, he otherwise fully participated in the case and has listened with care to the tape recorded oral arguments.

_____

## COUNSEL

**ARGUED:** Margaret Raben, GUREWITZ & RABEN, Detroit, Michigan, for Appellant. Krishna S. Dighe, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Margaret Raben, GUREWITZ & RABEN, Detroit, Michigan, for Appellant. Krishna S. Dighe, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

RYAN, Circuit Judge. The defendant, Marshall Dwayne Hughes, presents three issues for us to decide, on this, his direct appeal from his convictions for theft of government property, in violation of 18 U.S.C. § 641, and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The issues are:

1) whether, at sentencing, the district court was bound to apply the penalty provision of 18 U.S.C. § 641 that was in effect at the time of sentencing, rather than the penalty provision that was in effect at the time Hughes committed the underlying offense;

2) whether Hughes was entitled to a three-point reduction in offense level for acceptance of responsibility, rather than two points; and

3) whether the district court's use of the Guidelines' cross-reference provisions violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

We answer all three questions in the negative, as the district court did; therefore, we shall affirm.

## I.  Factual and Procedural Background

The facts are not in dispute.  On January 17, 1994, Hughes and an accomplice robbed a U.S. Deputy Marshal in the city of Detroit.  While Hughes's accomplice pointed a gun at the Marshal's head and back, Hughes took the Marshal's jewelry, service revolver, money, and leather coat.  Hughes and his accomplice then searched and threatened to kill another man who had been assisting the Marshal.  It is undisputed that the stolen service revolver belonged to the U.S. Government and had a value of more than $100, but less than $1,000.

Originally, Hughes was convicted and sentenced after a jury found him guilty of theft of government property and being a felon in possession of a firearm.  After his conviction and sentence were upheld on direct appeal, Hughes sought *habeas* relief.  The district court denied relief, but this court reversed and remanded the case, finding ineffective assistance of counsel at trial.  *Hughes v. United States*, 258 F.3d 453, 464 (6th Cir. 2001).  On remand, Hughes pleaded guilty to both counts, and the district court sentenced him on July 29, 2002.

Applying the 1994 Sentencing Guidelines, the district court found an adjusted offense level of 31 and a guideline range of 151-188 months, based on a criminal history category of IV.  The court sentenced Hughes to 120 months on Count 1, theft of government property, and 68 months on Count 2, being a felon in possession of a firearm, to be served consecutively.  The court also imposed a three-year term of supervised release to follow Hughes's incarceration and ordered him to pay restitution and a special assessment.

## II.  Analysis

### A.

The first issue Hughes presents arises from his claim that, in determining the appropriate sentence for his theft

conviction, the district court should have applied amended 18 U.S.C. § 641, which, at the time of sentencing, provided for a statutory maximum of one year of imprisonment for the theft of government property whose value did not exceed $1,000, *see* 18 U.S.C. § 641 (2000), rather than the more severe ten-year sentence that was in effect at the time of the commission of the offense.

"We examine de novo the purely legal question of whether a new statute applies to pending cases." *Wright v. Morris*, 111 F.3d 414, 417 (6th Cir. 1997).  For the reasons that follow, we conclude that the district court properly rejected Hughes's argument and applied the penalty provision that was in effect at the time Hughes committed the underlying theft of government property.

In January 1994, when Hughes robbed the U.S. Marshal of his government-owned service revolver, the penalty provision of 18 U.S.C. § 641 provided, in pertinent part, that a person guilty of theft of government property "[s]hall be fined . . . or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined . . . or imprisoned not more than one year, or both." 18 U.S.C. § 641 (1988).  The penalty provision in effect in July 2002, when Hughes was sentenced, provided for a one-year statutory maximum "if the value of such property does not exceed the sum of $1,000." 18 U.S.C. § 641 (2000).

The general rule, derived from the common law, is that a court must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974).  Nevertheless, the general saving clause, found at 1 U.S.C. § 109, provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall

so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109 (1997).

Thus, in evaluating Hughes's claim, we must consider whether 18 U.S.C. § 641 imposes a "penalty, forfeiture, or liability" saved from release or extinguishment by 1 U.S.C. § 109. A review of the plain language of the statute, together with relevant Supreme Court precedent, leads us to the conclusion that it does.

Section 641 plainly imposes a penalty for the theft of government property. The language of the statute, providing that a person guilty of theft of government property "[s]hall be fined . . . or imprisoned," could hardly be any clearer. The Supreme Court has explained that the saving clause was enacted

to abolish the common-law presumption that the repeal of a criminal statute resulted in the abatement of all prosecutions which had not reached final disposition in the highest court authorized to review them. Common-law abatements resulted not only from unequivocal statutory repeals, but also from repeals and re-enactments with different penalties, whether the re-enacted legislation increased or decreased the penalties. To avoid such abatements—often the product of legislative inadvertence—Congress enacted 1 U.S.C. § 109, the general saving clause . . . .

*Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660 (1974) (internal quotation marks and citations omitted).

In *Marrero*, the defendant was ineligible for parole under a statute that was in effect at the time he was sentenced. *Id.* at 655. After the statute was repealed, Marrero initiated *habeas corpus* proceedings to determine his parole eligibility status. *Id.* The Court held, *inter alia*, that 1 U.S.C. § 109 barred the Board of Parole from considering the defendant for parole. *Marrero*, 417 U.S. at 659. The Court explicitly noted that the saving clause "bar[s] application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense." *Id.* at 661.

Several of our sister circuits have come to the same conclusion. In *United States v. Jacobs*, 919 F.2d 10 (3d Cir. 1990), the issue before the Third Circuit was "whether a defendant [was] eligible for probation based on the offense classification in effect at the time she committed the offense or at the time she was sentenced." *Id.* at 10-11. The statute in effect when the defendant committed the offense provided that her offense was a Class B felony, with the result that she was ineligible for probation. *Id.* at 11. Prior to her sentencing, the statute was amended such that her offense was a Class C felony, which would have made her eligible for probation. *Id.* The Third Circuit held that "section 109 applies to amendments of statutory classifications that render a defendant eligible for probation." *Id.* at 12. Likewise, in *United States v. Cook*, 890 F.2d 672 (4th Cir. 1989), the Fourth Circuit held that the saving statute prevented a defendant who was ineligible for probation at the time she committed the offense from benefitting from a statutory amendment to the offense classifications that would have rendered her eligible for probation. *Id.* at 676. Finally, in a case factually similar to *Cook*, the Eighth Circuit held that a defendant "is not entitled to benefit from changes in a criminal penalty statute enacted after he committed his offense." *United States v. O'Meara*, 33 F.3d 20, 21 (8th Cir. 1994).

We hold that the penalty provision of 18 U.S.C. § 641 in effect at the time Hughes committed the underlying theft is saved from release or extinguishment by 1 U.S.C. § 109. The district court properly rejected Hughes's attempt to take advantage of an ameliorative criminal sentencing law that decreased the penalty for the theft of government property whose value is greater than $100, but not more than $1,000.

**B.**

Hughes's second argument is that he was entitled to a three-point reduction in offense level for his acceptance of responsibility. He contends that the district court clearly erred in granting him a mere two-point reduction. We disagree.

United States Sentencing Guideline Section 3E1.1(a) provides that a defendant's offense level should be decreased if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a) (1994). Pursuant to Section 3E1.1(b), a district court must award an additional one-point reduction in the offense level of a defendant who has demonstrated "super acceptance" of responsibility by either "(1) timely providing complete information to the government concerning his own involvement in the offense; or (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." U.S.S.G. § 3E1.1(b) (1994); *see also United States v. Robertson*, 260 F.3d 500, 507 (6th Cir. 2001). A defendant has the burden of proving, by a preponderance of the evidence, that a reduction under Section 3E1.1(b) is appropriate. *United States v. Benjamin*, 138 F.3d 1069, 1075 (6th Cir. 1998). The commentary to Section 3E1.1 notes that conduct qualifying for a reduction under Section 3E1.1(b) will generally "occur particularly early in the case." U.S.S.G. § 3E1.1, comment. (n.6) (1994).

We review the district court's factual findings for purposes of sentencing under the Guidelines for clear error, and we "give due deference to the district court's application of the guidelines to the facts." *United States v. Webb*, 335 F.3d 534, 537 (6th Cir. 2003) (internal quotation marks and citation omitted); *Robertson*, 260 F.3d at 506. "Issues involving the interpretation of Guidelines provisions, however, are legal questions which this court reviews *de novo*." *Robertson*, 260 F.3d at 506.

Although the district court found that Hughes was entitled to a two-point reduction in offense level for acceptance of responsibility, it declined to award a third point for "super acceptance" of responsibility because "[Hughes] did not admit his involvement in the instant offense in a timely manner. Further, he did not timely notify authorities of his intention to enter a plea of guilty thereby permitting the Government to avoid preparing for trial, and permitting the Court to allocate its resources efficiently . . . ."

We have carefully examined the record and find no clear error in the district court's findings. Hughes was a fugitive for 14 months after he committed these crimes, and he forced the government to proceed to trial in May 1995. He did not fully accept responsibility for his acts until it was apparent that there was overwhelming evidence against him, based on the government's efforts in preparing and presenting the case in the first instance. Finally, Hughes did not plead guilty until three weeks before his second trial was scheduled to begin, and even then, he attempted to withdraw his guilty plea. Based on the record before us, we cannot say that the district court clearly erred in declining to award Hughes a third point for "super acceptance" of responsibility.

**C.**

Finally, Hughes argues that the district court violated his Fifth and Sixth Amendment rights by cross-referencing his § 922(g) conviction in accordance with U.S.S.G.

§§ 2K2.1(c)(1)(A) and 2X1.1(c)(1) to U.S.S.G. § 2B3.1, the Sentencing Guideline for robbery. Hughes claims that the district court impermissibly sentenced him as if he had committed a crime, robbery, for which he was never charged and for which no jury found him guilty beyond a reasonable doubt. He argues that the Guidelines may not be applied in this manner, unless a jury first finds beyond a reasonable doubt that he engaged in the alleged conduct. He relies on *United States v. Stubbs*, 279 F.3d 402 (6th Cir. 2002), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to support this argument.

We review the district court's legal conclusions *de novo* and its fact-finding for clear error. *United States v. Griffis*, 282 F.3d 443, 446 (6th Cir. 2002).

The district court adopted the recommendation of the Probation Department and cross-referenced Hughes's § 922(g) conviction for being a felon in possession of a firearm in accordance with U.S.S.G. § 2K2.1(c)(1)(A), which directed the application of § 2X1.1(c), which, in turn, directed the application of § 2B3.1. Section 2B3.1, the Guideline provision for robbery, creates a base offense level of 20. *See* U.S.S.G. § 2B3.1 (1994). The court added 13 points for various adjustments and specific offense characteristics, and credited the defendant with two points for acceptance of responsibility.

Hughes's argument that the district court's use of the Guidelines' cross-reference provisions violated his Fifth and Sixth Amendment rights is without merit. We rejected an identical claim in *United States v. Helton*, 349 F.3d 295 (6th Cir. 2003). In sentencing the defendant in that case,

> the district court cross-referenced his § 922(g) conviction for possession of a firearm in accordance with U.S.S.G. § 2K2.1(c)(1)(A), concluding that he had used the firearm in connection with an attempt to commit another offense. Under U.S.S.G. § 2X1.1(c), the district court

> determined that the attempt was expressly covered by the Guidelines' provision for attempted murder, *see* U.S.S.G. § 2A2.1(a)(1), which creates a base-offense level of twenty-eight.

*Id.* at 297.

Helton argued that the district court impermissibly and unconstitutionally "sentenced him as if he had committed a crime (attempted murder) for which he was never charged and for which no jury found him guilty beyond a reasonable doubt." *Id.* at 299. He argued that applying the Guidelines in this manner to increase his sentence, where a jury had not first found beyond a reasonable doubt that he engaged in the alleged conduct, violated his Fifth and Sixth Amendment rights. *Id.* He relied on *Stubbs* and *Apprendi* to support his argument. *Id.*

In addressing Helton's constitutional challenges to the district court's use of the cross-references, we noted that "*Stubbs* . . . is no longer good law. Neither that decision nor the precedents upon which it relied have survived a recent Supreme Court decision delineating the scope of *Apprendi*." *Id.* (internal citations omitted). The *Helton* court went on to explain:

> [O]nce the jury has determined guilt, the district court may sentence the defendant to the statutory minimum, the statutory maximum, or anything in between, based on its (proper) application of the Guidelines and based on its (permissible) preponderance-of-the-evidence findings under the Guidelines. So long as the judge does not sentence the defendant beyond the maximum levels authorized by the statute under which the defendant was convicted, *Harris [v. United States*, 536 U.S. 545 (2002),] makes clear that the district court does not run afoul of *Apprendi* or the constitutional rights that it protects.

*Id.*

The *Helton* court concluded that so long "[a]s no single sentence exceed[s] the maximum permitted by statute under any of the . . . counts on which the jury convicted [the defendant, the defendant's] constitutional challenge cannot succeed." *Id.* at 300.

Hughes's argument is identical in all material respects to the argument this court rejected in *Helton*. As the statutory maximum for each of Hughes's counts of conviction was 120 months, *see* 18 U.S.C. § 924(a)(2); 18 U.S.C. § 641 (1988), and as it is undisputed that no single sentence exceeded the maximum permitted by statute, the district court's decision must be affirmed. *See Helton*, 349 F.3d at 300.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's judgment.